Walter W. STERN, Plaintiff-Appellant,†

Gregory SELL, Plaintiff,

v.

THOMPSON & COATES, LTD., Susan Perry and National Union Fire Insurance Company of Pittsburgh, PA, Defendants-Respondents-Petitioners.

Supreme Court

*No. 92–2279. Oral argument May 24, 1994.—Decided June 23, 1994.*

(Also reported in 517 N.W.2d 658.)

†Motion for reconsideration denied September 21, 1994.

For the plaintiff-appellant there was a brief by *David J. Nommensen* and *Seymour, Kremer, Nommen-*

*sen, Morrissy & Koch,* Elkhorn and oral argument by *David J. Nommensen.*

For the defendants-respondents-petitioners there were briefs by *Robert H. Bichler, JoAnne M. Breese* and *Hostak, Henzl & Bichler, S.C.,* Racine and oral argument by *Robert H. Bichler.*

DAY, J.   This is a review of an unpublished decision of the court of appeals, reversing a judgment of the Circuit Court of Racine County, Honorable Emmanuel J. Vuvunas, judge, which found plaintiff-appellant Walter W. Stern (Atty. Stern) liable for bringing frivolous claims (on behalf of his client) against the defendants, Atty. Susan Perry and her law firm Thompson & Coates (hereinafter Atty. Perry). The circuit court found that Atty. Stern made frivolous claims in violation of both subsection (3)(a) and subsection (3)(b) of sec. 814.025, Stats.[1] Under sec. 814.025(2),

---

[1] **814.025   Costs upon frivolous claims and counterclaims.**
(1) If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

(2)   The costs and fees awarded under sub. (1) may be assessed fully against either the party bringing the action, special proceeding, cross complaint, defense or counterclaim or the attorney representing the party or may be assessed so that the party and the attorney each pay a portion of the costs and fees.

(3)   In order to find an action, special proceeding, counterclaim, defense or cross complaint to be frivolous under sub (1), the court must find one or more of the following:
    (a)   The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

227

Stats., these costs and reasonable attorney fees were assessed against Atty. Stern.

The court of appeals reversed the circuit court's judgment as to both subsection (3)(a) and subsection (3)(b) of sec. 814.025, Stats. We agree with the court of appeals as to subsection (3)(a), but reverse the court of appeals as to subsection (3)(b). Since the circuit court would be required to assess costs and fees after a judgment under either subsection (3)(a) or subsection (3)(b) of sec. 814.025, Stats., the assessment of costs remains as determined by the circuit court.

The original plaintiff in this action, Gregory Sell (Mr. Sell), is the adjudicated father of Evelyn DeFatte's (Ms. DeFatte's) minor child. Over the years, Mr. Sell and Ms. DeFatte have resorted to the judicial system several times concerning disputes on child support, visitation schedules, and related matters. In the course of these disputes both Mr. Sell and Ms. DeFatte have been represented by several attorneys.

The latest dispute began in August of 1987, when Ms. DeFatte retained the services of Atty Perry to seek a modification of the existing support and visitation order. Atty. Perry had never represented Ms. DeFatte prior to that time.

In an effort to reach a voluntary agreement on these matters, Atty. Perry wrote a letter to Mr. Sell on August 6, 1987, outlining the desired modifications. Atty. Perry requested in the letter that Mr. Sell contact her, but warned that if she did not receive a reply by

---

(b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

(4) To the extent s. 802.05 is applicable and differs from this section, s. 802.05 applies.

August 14, 1987, she would initiate an action in court. Mr. Sell received the letter, but did not respond.

When she received no response, Atty. Perry drafted a "Notice of Motion and Motion" along with a supporting affidavit for the modification of support payments, visitation, medical insurance, and tax benefit allocations, which was presented to, and signed by, Judge Dennis Flynn, of the Circuit Court of Racine County, on August 31, 1987. The document ordered Mr. Sell to appear at a hearing scheduled therein for September 17, 1987.

Atty. Perry delivered these documents to the Racine Constable, Lewis Rognerud (Constable Rognerud), so that they might be served upon Mr. Sell. On September 16, 1987, Constable Rognerud completed an affidavit certifying that "after due and diligent search and inquiry," he could not locate Mr. Sell for service of the documents. He stated that, four attempts were made to serve Mr. Sell and that messages had been left asking Mr. Sell to contact Constable Rognerud's office. Constable Rognerud added in the affidavit that he believed Mr. Sell was avoiding service. Mr. Sell, who claims he received no such messages, did not respond and did not show up at the hearing on September 17, 1987.

When Atty. Perry and Ms. Defatte appeared before the family court commissioner as scheduled on September 17, 1987, and Mr. Sell was not present, Atty. Perry filed Constable Rognerud's affidavit of nonservice. The family court commissioner, who concurred that Mr. Sell was avoiding service, advised Atty. Perry that she could seek a so-called "body attachment." Atty. Perry was also advised to apply for the body attachment by an assistant district attorney, whose advice she had sought.

The next day Atty. Perry submitted an Affidavit for Attachment before Judge Flynn. In the affidavit Atty. Perry stated that she was representing Ms. Defatte in an action for revision of support, that a motion to review the child support payments, tax benefit allocations, and medical and hospitalization insurance provisions could not be served on defendant, and that Mr. Sell had failed to appear at the hearing which had been scheduled before the family court commissioner on September 17, 1987. Atty. Perry attested that a "due and diligent search" had been made in the failed attempt to serve the papers on Mr. Sell. The affidavit then requested that an attachment for Mr. Sell be issued and that he be ordered to appear before the family court commissioner on the new date of October 8, 1987.

Judge Flynn signed the body attachment. The body attachment was issued under sec. 885.11(2), Stats., and sec. 818.02(1)(f), Stats.[2] The attachment order was sent to the Racine County sheriff for execution, who, in turn, transferred the attachment order to the Kenosha County sheriff's office because Mr. Sell lived in Kenosha County.

---

[2] **885.11 Disobedient witness. . . . (2)** ATTENDANCE COMPELLED. Every court, in case of unexcused failure to appear before it, may issue an attachment to bring such witness before it for the contempt, and also to testify.

**818.02 When arrests may be made. (1)** The defendant may be arrested as hereinafter prescribed in the following cases: . . . (f) In a proceeding to determine paternity or establish a child support or maintenance obligation, if the court or family court commissioner finds that the petitioner cannot effect service of process upon the respondent despite due diligence on the part of the petitioner or after the respondent is personally served but fails to appear on the return date, on the date set for the pretrial hearing or on the date set for the trial.

The sheriff located Mr. Sell at his home on the night of Friday, the 25th of September, after Mr. Sell telephoned his wife about visiting his son that weekend. He stated that he had returned from extended business trips. The sheriff arrested Mr. Sell pursuant to the body attachment and delivered him to the Racine County sheriff. He was placed in the Racine County jail, where he spent the weekend. Mr. Sell contacted his attorney at the time, Mr. Delcore, but no effort was made to obtain release over the weekend.

On Monday, September 28, Mr. Sell was brought before Judge Flynn who then ordered Mr. Sell to appear at the hearing scheduled before the family court commissioner on October 8, 1987. Mr. Sell was then released. He did attend the hearing on October 8, 1987.

The present action commenced when Mr. Sell sued those he believed were responsible for his arrest and incarceration under the body attachment. Among others, he sued both Racine and Kenosha counties, Ms. Defatte, who was subsequently dismissed voluntarily from the proceedings, and Ms. Defatte's lawyer, Atty. Perry, and her law firm, Thompson & Coates, Ltd. It is the suit against Atty. Perry and her law firm which concerns us in this review.

Atty. Perry was sued for abuse of process and false imprisonment for her role in securing the body attachment. It was Atty. Stern's argument on behalf of Mr. Sell that Atty. Perry had committed a fraud upon the court in seeking the body attachment. Specifically, it was alleged that her application for the body attachment was improper and that she had misled Judge Flynn in obtaining the body attachment.

Mr. Sell, however, did not prevail on his claims. Summary judgment was granted as to all the defendants. Following the judgment, three of the defendants,

Kenosha County, Atty. Perry, and her law firm brought a motion before the court for attorneys' fees and costs pursuant to sec. 814.025, Stats., and sec. 802.05(1), Stats.[3]

On June 23, 1989 Judge Vuvunas held a hearing on the motions for fees. The court found that the action against Kenosha County was frivolous. He requested memorandums of law from counsel before ruling on motions for Atty. Perry and her law firm.

In the interim, Mr. Sell appealed the summary judgment motions in favor of Kenosha County, Atty. Perry and her law firm. The court of appeals affirmed the judgments in *Sell v. Thompson & Coates, Ltd.,* 163 Wis. 2d 765, 472 N.W.2d 834 (Ct. App. 1991). As to Atty. Perry's conduct, the court of appeals stated emphatically that "[n]o evidence exists of any malice or

---

[3] **802.05 Signing of pleadings, motions and other papers; sanctions. (1)** (a) *Every pleading, motion or other paper of a party represented by an attorney* . . . shall be subscribed with the handwritten signature of at least one attorney of record in the individual's name . . . .. The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper, or on a represented party, or on both. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees.

fraud on Attorney Perry's part," and that "[n]o evidence exists that Attorney Perry was acting in bad faith in applying for the body attachment." *Id.,* at 776. This court denied Mr. Sell's petition for review of that decision.

When the record was returned, the circuit court conducted the hearing on the outstanding motions for fees under sec. 814.025, Stats., and sec. 802.05(1), Stats., by Atty. Perry and her law firm. The circuit court concluded that the action against Atty. Perry and her law firm was frivolous under both (3)(a) and (3)(b) of sec. 814.025, Stats. That is, the court concluded both that the suit was intended solely for harassment purposes and that the claims had no reasonable basis in law or equity.

Under sec. 814.025(2), Stats., the court may assess the costs of frivolous claims against the attorney, the client, or both. The court assessed the costs against Mr. Sell's counsel in this action, Atty. Stern.

Atty. Stern appealed. The court of appeals, in an unpublished decision, reversed the circuit court. It reversed the circuit court's ruling as to both subsection (3)(a) and subsection (3)(b) of sec. 814.025, Stats. As to subsection (3)(a), the court of appeals concluded that there were no facts which could support a finding that the suit was commenced "solely for purposes of harassing" the defendant. The court of appeals acknowledged that it must defer to the factual inferences drawn by the circuit court, but it found that this finding by the circuit court was purely "conclusory" and without the requisite finding of fact. The court of appeals, citing *Sommer v. Carr,* 99 Wis. 2d 789, 793, 299 N.W.2d 856 (1981), concluded that a finding of harassment under sec. 814.025(3)(a), Stats., would require that specific findings of those facts which constituted harassment

be cited by the circuit court. Since only the conclusion of harassment and no supporting facts were cited, the court of appeals reversed as to that claim.

Under subsection (3)(b) of sec. 814.025, Stats., the court of appeals concluded that the allegations made against Atty. Perry were not frivolous because an attorney is not entitled to qualified immunity if the attorney has committed a fraud on the court. Since, if proven, the allegations of abuse of process and false imprisonment would entail proof of fraud, the suit would have a basis to proceed. It should be noted that the court of appeals specifically limited its decision to the question of whether the suit against Atty. Perry was frivolous at its *commencement.* The court of appeals made no comment as to whether the claims against Atty. Perry became frivolous at some point as the suit continued.

We conclude that the claims against Atty. Perry were frivolous under subsection (3)(b) of sec. 814.025, Stats., at the *commencement* of the action. We agree with the court of appeals that there were not sufficient findings to conclude that the action was frivolous under sec. 814.025(3)(a), Stats. We also agree with the court of appeals that an attorney's qualified immunity would not prevent a suit which properly alleged fraudulent behavior on the part of the attorney. Thus there is a basis in law for making a claim of abuse of process and false imprisonment. However, we conclude that based on the facts which were known to Atty. Stern, there was no basis to support the allegations. That is, while qualified immunity would not prevent the allegations of fraud from being made, there was no basis in fact to support the specific allegations, and this was known or should have been known by Atty. Stern.

Since costs may be assessed for a finding of frivolousness under either subsection (3)(a) or subsection

(3)(b) of sec. 814.025, Stats., we affirm the trial court's judgment and its assessment of costs.

■

"Frivolous action claims are an especially delicate area since it is here that ingenuity, foresightedness and competency of the bar must be encouraged and not stifled." *Radlein v. Industrial Fire & Cas. Ins. Co.,* 117 Wis. 2d 605, 613, 345 N.W.2d 874 (1984). Many areas of the present law would not have developed without creative and innovative positions taken by attorneys for good faith development of the law. *Id.* at 613–614. We also note that an attorney has an obligation to represent his or her client's interests zealously, and that this may include making some claims which are not entirely clear in the law or on the facts, at least when commenced. Thus, when a frivolous action claim is made, all doubts are resolved in favor of finding the claim nonfrivolous. *See, In Matter of Estate of Bilsie,* 100 Wis. 2d 342, 350, 302 N.W.2d 508 (Ct. App. 1981). However, when it nevertheless becomes clear that the suit was brought solely for the purposes of harassment or malicious injury, under subsection (3)(a) of sec. 814.025, Stats., or was brought without any reasonable basis in law or equity under subsection (3)(b) of sec. 814.025, Stats., the action or claim will be held frivolous.

The circuit court in this case found that the claims made by Atty. Stern (on behalf of Mr. Sell) were frivolous under both subsections (3)(a) and (3)(b) of sec. 814.025, Stats. Since they are separate violations we examine them independently.

■

The question of whether a reasonable attorney or litigant "commenced, used or continued" a claim "in bad faith, solely for purposes of harassing or mali-

ciously injuring another," under subsection (3)(a) of sec. 814.025, Stats., is analyzed under a subjective standard. *Sommer,* 99 Wis. 2d at 797; *Robertson-Ryan v. Pohlhammer,* 112 Wis. 2d 583, 589, 334 N.W.2d 246 (1983). The court must determine what was in the person's mind and were his or her actions deliberate or impliedly intentional with regard to harassment or malicious injury. *Sommer,* 99 Wis. 2d at 797. The findings must be specific. As this court has emphasized, "[t]he [frivolous claims] statute does not allow the trial judge to conclude frivolousness or lack of it without findings stating which statutory criteria were present . . . Attitudes such as bad faith, harassment, maliciousness solely for injuring another do not appear in this record unless the trial judge finds them present." *Id.,* at 792–793.

This inquiry involves a mixed question of law and fact. *See, State v. State Farm Fire & Cas. Co.,* 100 Wis. 2d 582, 601–602, 302 N.W.2d 827 (1981). The findings by the circuit court of what was said, what was done, what was thought, and reasonable inferences drawn therefrom, are questions of fact. *State Farm,* 100 Wis. 2d at 602. Such findings will not be upset unless they are against the great weight and clear preponderance of the evidence. *Sommer,* 99 Wis. 2d at 792; *Robertson-Ryan,* 112 Wis. 2d at 590. However, the ultimate conclusion of whether the facts cited fulfill the legal standard of frivolousness is a question of law which we review independently of the conclusions of the circuit and appellate courts. *State Farm,* 100 Wis. 2d at 602.

Since the inquiry is subjective, and not generally susceptible to direct proof, the state of mind of the person "must be inferred from the acts and statements

of the person, in view of the surrounding circumstances." *Pfeifer v. World Service Life Ins. Co.,* 121 Wis. 2d 567, 569, 360 N.W.2d 65 (Ct. App. 1984). An appellate court must accept a reasonable inference drawn by the trial court from established facts if more than one reasonable inference may be drawn. *Vocation. Tech. & Adult Ed. Dist. 13 v. ILHR Dept.,* 76 Wis. 2d 230, 239–240, 251 N.W.2d 41 (1977); *State v. Friday,* 147 Wis. 2d 359, 370–371, 434 N.W.2d 85 (1989); *see also, Radlein,* 117 Wis. 2d at 609; *Ford v. Kenosha County,* 160 Wis. 2d 485, 492 n.5, 466 N.W.2d 646 (1991). However, the appellate court will reject an unreasonable inference. *Vocation. Tech.,* 76 Wis. 2d at 239–240, *Friday,* 147 Wis. 2d at 370–371; *Ford,* 160 Wis. 2d at 492 n.5. Whether an inference is reasonable is itself a question of law. *State v. Ziegenhagen,* 73 Wis. 2d 656, 669, 245 N.W.2d 656 (1976); *Pfeifer,* 121 Wis. 2d at 570. If the underlying facts are undisputed or if there is only one reasonable inference that can be made, the drawing of that inference is a question of law. *Vocation Tech.,* 76 Wis. 2d at 239–240.

In announcing its decision as to subsection (3)(a) of sec. 814.025, Stats., the circuit court stated the following at the motion hearing:

> This case was brought for the purposes of harassment. There is no doubt that the defendant was outraged, and for some reason Mr. Stern bought into that sense of outrage. It's uncontroverted by the affidavits here, the affidavits have been presented. Mr. Stern may have [sic] different opinion, but the only thing before the Court had the affidavits of [two attorneys with Thompson & Coates] that they approached Mr. Stern before this action and told him that the position was absolutely

237

unsupportable and pointed him the way to look for himself to see if these actions were unsupported.

As the passage shows, the circuit court based its findings for a frivolous claim under subsection (3)(a) in part on the fact that opposing counsel had contacted Atty. Stern and told him that the claims were precluded by the case law. Specifically, they cited to him the case of *Strid v. Converse,* 111 Wis. 2d 418, 331 N.W.2d 350 (1983). It was the contention of those attorneys that *Strid* absolutely precluded the claims made by Atty. Stern, and that the fact he proceeded anyhow proved he meant only to harass.

We disagree. One may seek to distinguish *Strid* from the present situation, but nothing in *Strid* absolutely precludes the claims for abuse of process and false imprisonment brought by Atty. Stern. To the contrary, this court in *Strid,* at 427, found that a claim for abuse of process could be brought against an attorney.[4] In *Strid,* at 430, it was alleged that the defendant "acted maliciously and vindictively in preparing the warrant and causing the arrest of the plaintiff." Therefore, regardless of how one cites *Strid,* it does not support a finding that Atty. Stern had no reasonable basis in law or equity to bring a claim of abuse of process.

---

[4] As the court explained in *Strid,* at 429–430, the case law demonstrates that "the immunity of an attorney who is acting in a professional capacity is qualified rather than absolute. The immunity from liability to third parties extends to an attorney who pursues in good faith his or her client's interests on a matter fairly debatable in the law. However, the immunity does not apply when the attorney acts in a malicious, fraudulent or tortious manner which frustrates the administration of justice or to obtain something for the client to which the client is not justly entitled."

238

Equally important, as the court of appeals observed, is the fact that even if *Strid* had precluded the action by Atty. Stern, this does not go to whether the claim was brought as harassment under subsection (3)(a), but rather goes to whether the claim had a reasonable basis in law or equity under subsection (3)(b). The two subsections are separate. The fact that a claim may have had no reasonable basis in law or equity, i.e, a finding of frivolousness under subsection (3)(b) of sec. 814.025, Stats., does not mean that one necessarily violated subsection (3)(a), as well. A finding that a claim is frivolous under subsection (3)(a) because the suit was brought solely for the purpose of harassment must be based upon an evidentiary foundation separate from the elements of subsection (3)(b).[5]

The only other reason cited by the circuit court to support its finding that the claims were brought solely for harassment purposes was that Atty. Stern had "bought into" Mr. Sell's sense of outrage. That finding, however, as the court of appeals concluded, is a "bald conclusion with no facts stated to support such an inference." The legislature clearly wanted to limit a finding of frivolousness under subsection (3)(a) to those in which the sole motivation for the suit was harassment or malicious injury.[6] This high standard typically

---

[5] The circuit court's parenthetical notation that Atty. Stern may have had a different opinion about whether there was a basis in law or fact would tend to indicate that he was motivated at least in part by the perceived merits of the claim.

[6] The word "solely" is intended to erect a high standard. However, we do note that the mere fact that a party also requests monetary damages does not by itself eliminate the possibility that the suit could be deemed brought "solely" for

would require a finding of bad faith based upon some statements and actions, including, for example, threats *See, e.g., Thompson v. Beecham,* 72 Wis. 2d 356, 364, 241 N.W.2d 163 (1976); *see also, Associates Fin. Services Co. v. Hornik,* 114 Wis. 2d 163, 336 N.W.2d 395 (1983). The only statement made in this case even approaching a "threat" was the passing comment by Mr. Sell that he would "look nice" behind the wheel of Atty. Perry's car, and that she would be very sorry for what she had done. Bad faith, however, is personal to the party charged. *See, Blankenship v. Computers & Training,* 158 Wis. 2d 702, 705, 462 N.W.2d 918 (Ct. App. 1990). There was no evidence that Atty. Stern made any unprofessional threats or engaged in any harassing actions. Without such supporting findings, a ruling that a claim is frivolousness under subsection (3)(a) of sec. 814.025, Stats., cannot be affirmed. *Sommer,* 99 Wis. 2d at 792–793.

■

A claim is frivolous under subsection (3)(b) of sec. 814.025, Stats., if the party or attorney "knew or should have known" that the claim was "without any reason-

harassment purposes or to maliciously injury someone. In a footnote in *Stoll v. Adriansen,* 122 Wis. 2d 503, 514, n.5, 362 N.W.2d 182 (1984), the court of appeals stated that, "[t]he trial court found that while harassment was the Stoll's primary purpose, [it was not their *sole* purpose because] they also sought a monetary judgment." Perhaps what the court of appeals meant was that the Stolls did also want to harass, but that this was not their sole motivation because they were genuinely concerned with their monetary claims. However, speaking generally, a claim of frivolousness under sec. 814.025(3)(a), Stats., does not fail merely because a party happens to seek a monetary judgment. To the contrary, the inclusion of a large monetary claim, such as the $2.5 million dollars sought in the present claim, could well increase the harassing nature of the suit.

able basis in law or equity." In contrast to the analysis under subsection (3)(a), a finding of frivolousness under subsection (3)(b) of sec. 814.025, Stats., is based on an objective standard. *Id.,* 99 Wis. 2d at 797; *Robertson-Ryan,* 112 Wis. 2d at 589. The standard is "whether the attorney knew or should have known that the position taken was frivolous as determined by what a *reasonable attorney* would have known or should have known under the same or similar circumstances." *Sommer,* 99 Wis. 2d at 799.

As with the analysis under subsection (3)(a) of sec. 814.025, Stats., the inquiry under subsection (3)(b) involves a mixed question of law and fact. *State Farm,* 100 Wis. 2d at 601–602. Determining what was known or should have been known involves questions of fact. Such findings of fact will not be upset unless they are against the great weight and clear preponderance of the evidence. *Sommer,* 99 Wis. 2d at 792; *Robertson-Ryan,* 112 Wis. 2d at 590. However, as under (3)(a), the ultimate conclusion about whether what was known or should have been known supports a finding of frivolousness under subsection (3)(b) of sec. 814.025, Stats., is a question of law which we review independently of the conclusions of the circuit and appellate courts. *State Farm,* 100 Wis. 2d at 602.

The threshold inquiry under subsection (3)(b) is whether the claim may even be brought.[7] In the present case the question is whether or not the claim against Atty. Perry was barred by attorney immunity.

---

[7] We emphasize that the question of frivolousness is not determined in the same manner as motions for summary judgment or directed verdict or dismissal for failure to state a claim upon which relief can be granted. *See, Stoll,* 122 Wis. 2d at 509.

This court has long held that an attorney at law is an officer of the court, *Langen v. Borkowski,* 188 Wis. 277, 301, 206 N.W. 181 (1925); *Strid,* 111 Wis. 2d at 428, and is considered to occupy a "quasi-judicial" office. *Langen,* 188 Wis. at 301; *Strid,* 111 Wis. 2d at 428. Accordingly, this court has long recognized that an attorney who is acting in a professional capacity enjoys a qualified immunity. *Langen,* 188 Wis. at 301; *Strid,* 111 Wis. 2d at 429; *Goerke v. Vojvodich,* 67 Wis. 2d 102, 105, 226 N.W.2d 211 (1975). An attorney is immune from liability to third parties so long as the attorney pursues in good faith his or her client's interests on a matter fairly debatable in the law. *Strid,* 111 Wis. 2d at 429.

The qualified immunity falls away, however, when an attorney acts in a malicious, fraudulent, or tortious manner which frustrates or perverts the administration of justice. *Strid,* at 429–420; *Goerke,* 67 Wis. 2d at 106–108 (fraudulent misrepresentation). If such behavior is properly pleaded and proved, there is no immunity and the attorney may be subject to liability to third parties.

Both of the allegations made by Atty. Stern against Atty. Perry involve a fraud upon the court. Abuse of process is a tort which consists of (1) a purpose other than that which the process was designed to accomplish, and (2) a subsequent misuse of the process. *Thompson,* 72 Wis. 2d at 362; *Strid,* 111 Wis. 2d at 427. False imprisonment has been defined as the " 'unlawful restraint by one person of the physical liberty of another.' " *Maniaci v. Marquette University,* 50 Wis. 2d 287, 295, 184 N.W.2d 168 (1971) (quoting *Lane v. Collins,* 29 Wis. 2d 66, 69, 138 N.W.2d 264 (1965)). One is

subject to liability for false imprisonment if that person acts to cause a false arrest, i.e., an arrest made without legal authority. *Sell,* 163 Wis. 2d at 772.

Since such a fraud upon the court, if proven, would strip an attorney of his or her qualified immunity, there is a basis in law to proceed with such claims.[8] This is what the court of appeals concluded, and we agree with its analysis up to this point.

Having determined that there is a basis in law to bring the claims, we turn to the question of whether there was a requisite basis in fact for the allegations as made. We conclude, unlike the court of appeals, that there was no basis in fact for the allegations as made, and that Atty. Stern knew or should have known this.

A claim is not frivolous merely because there is a failure of proof. *See, State Farm,* 100 Wis. 2d at 604; *Robertson-Ryan,* 112 Wis. 2d at 590. Nor is a claim frivolous merely because it was later shown to be incorrect, *Sommer,* 99 Wis. 2d at 797, or because it lost on

---

[8] We note that the claims of abuse of process and false imprisonment against an attorney are viewed as a species of fraud, to wit: a fraud against the court or judicial system. As such, they must be pleaded with particularity. *See, Radlein,* 117 Wis. 2d at 620. Section 802.03(2), Stats., provides:

> FRAUD, MISTAKE AND CONDITION OF MIND. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

For the purposes of this case we will assume that Atty. Stern has pleaded these allegations (on behalf of Mr. Sell) with sufficient particularity.

the merits.[9] However, a claim cannot be made reasonably or in good faith, even though possible in law, if there is no set of facts which could satisfy the elements of the claim, or if the party or attorney knows or should know that the needed facts do not exist or cannot be developed. *See, State Farm,* 100 Wis. 2d at 599, 603–604; *In Matter of Estate of Bilsie,* 100 Wis. 2d at 346; *Stoll,* 122 Wis. 2d at 513 (total lack of proof); *Blankenship,* 158 Wis. 2d at 708 (total lack of evidence); *Wengerd v. Rinehart,* 114 Wis. 2d 575, 582–583, 338 N.W.2d 861 (Ct. App. 1983). That is, if the attorney knows or should reasonably know that the facts necessary to meet the required elements of an allegation are not present and cannot be produced, then the attorney has no cause of action. For instance, in *Stoll,* 122 Wis. 2d at 515, the court of appeals determined that "the total lack of evidence necessary to prove negligence would lead a reasonable party to conclude under the facts of this case that assertion of such a claim would be frivolous."

The question then becomes what facts did Atty. Stern know or what should he have known with refer-

_____

[9] As the court of appeals has correctly observed, "[a] finding of frivolousness may not be predicated on the fact that the party against whom the charge is levelled lost the case." *In Matter of Estate of Bilsie,* 100 Wis. 2d at 356. We emphasize, as did the court of appeals, that merely because the action against Atty. Perry did not survive summary judgment does not mean that the action was frivolous. As the court of appeals noted in the subsequent case in which it reversed the circuit court's ruling of frivolousness against Atty. Stern, the two cases involved different inquiries. The first court of appeals decision in this case, in *Sell,* 163 Wis. 2d 776–777, held only that atty. Perry had not committed abuse of process and was not liable for false imprisonment. It did not address the separate question about whether the claims themselves were frivolous.

ence to proving the allegations when he commenced the suit.[10] In the case, *In Matter of Estate of Bilsie,* 100 Wis. 2d at 354, the court of appeals stated that these facts must be assessed against the "burden or quantum of proof required by law to prevail on the claim or defense." The court must determine whether the evidentiary facts available to the party against whom sec. 814.025, Stats., is used, provide "any reasonable basis" to meet the party's burden of proof. *Id.* The court of appeals went on to note that "[t]he quantum of proof necessary to create 'any reasonable basis' will vary with the burden of proof imposed by law. A greater quantum of proof is necessary to create a reasonable basis for a claim or defense which must be proved by clear, satisfactory and convincing evidence than is necessary to create a reasonable basis for a claim or defense which must be proved by a preponderance of the evidence." *Id.,* at 354, n.6.

Atty. Stern's general complaint was that Atty. Perry made improper resort to the body attachment. However, since the court issuing the body attachment was satisfied that Atty. Perry had followed the correct

---

[10] *In Matter of Estate of Bilsie,* 100 Wis. 2d at 354–355, the court of appeals stated that these facts must be assessed against the "burden or quantum of proof required by law to prevail on the claim or defense." The court must determine whether the evidentiary facts available to the party against whom sec. 814.025, Stats., is used, provide "any reasonable basis" to meet the party's burden of proof. *Id.* The court of appeals went on to note that "[t]he quantum of proof necessary to create 'any reasonable basis' will vary with the burden of proof imposed by law. A greater quantum of proof is necessary to create a reasonable basis for a claim or defense which must be proved by clear, satisfactory and convincing evidence than is necessary to create a reasonable basis for a claim or defense which must be proved by a preponderance of the evidence." *Id.,* at 354, n.6.

procedure and had submitted the appropriate materials, the only way that Atty. Perry could be found liable is if Atty. Stern could prove that she somehow actively misled or defrauded the court.[11] Since this fraud or misrepresentation was supposed to have occurred when Atty. Perry applied for the body attachment, we must examine what Atty. Perry did and how this comported with what she is legally entitled to do. That is, if Atty. Stern's allegations that Atty. Perry misled or defrauded the court in her application for the body attachment are to have some basis in fact, they must find it in the application itself.

The application for the body attachment is a simple one page document setting forth the background of the case to that point and requesting the body attachment. Most of the information conveyed in the application consists of facts of record. The affidavit and application begins by stating that Atty. Perry represents Ms. Defatte in an action then pending before the court for revision of support proceedings and that the matter concerns a motion to review child support payments, and other related issues. The affidavit then notes that there had been a hearing on September 17, 1987, but that the defendant, Mr. Sell, did not appear. The affidavit stated that due diligence had been exercised in attempting to serve Mr. Sell, which was

---

[11] We emphasize that the question here is not whether the body attachment itself was entirely proper, but rather whether atty. Perry's involvement was within proper standards. The standard, as explained in *Strid*, 111 Wis. 2d at 429, and in *Sell*, 163 Wis. 2d at 777, is that atty. Perry deserves qualified immunity if her actions as an attorney are "fairly debatable" in the law. She would be entitled to such immunity if her actions were "fairly debatable" even if there were questions about the validity of the warrant itself. *See, Strid.*, 111 Wis. 2d at 425, n.5.

substantiated by a supporting affidavit by Constable Rognerud. The application explained that a new hearing date had been set for October 8, 1987, and requested that Mr. Sell be made to appear at that hearing. All of this information, it is noted, consists of facts of record. They are uncontroversial, uncontroverted, and easily verified. The question, then, is what basis does this application provide for the allegations against Atty. Perry.[12]

The first allegation Atty. Stern made in the original complaint was that Atty. Perry's representation in the affidavit that Mr. Sell had missed the September 17, 1987 hearing was untrue.[13] Of course, as a fact of record, it is easily confirmed that Mr. Sell had in fact missed the hearing. Such a misstatement by Atty. Stern might be somehow explicable, but in the context of a frivolous claim, the fact that an attorney has failed to make himself aware of the crucial facts of record will not create a question of fact where none exists. Section 814.025, Stats., does not require the highest level of competence or legal ability, however, the statute

[12] In *Sell,* 163 Wis. 2d at 776, the court of appeals was not addressing the question about whether there was any basis for a claim against atty. Perry, but it did find that "[t]he facts alleged in [atty. Perry's] supporting affidavit are undisputed." We agree.

[13] In paragraph 9 of the original Complaint, Atty. Stern stated the following: "That Susan M. Perry, attorney, an agent for THOMPSON & COATES, LTD., as well as defendant Evelyn Defatte, became impatient in not being able to serve said plaintiff to get him into court prior to September 17, 1987, so the defendant's attorney, Susan M. Perry, drew up an affidavit and body attachment to procure the plaintiff's arrest by placing him in a jail; alleged that said plaintiff failed to attend court (*which was totally untrue*); . . ." (Emphasis supplied.)

247

assumes and requires an adequate investigation of the facts and law. *In Matter of Estate of Bilsie,* 100 Wis. 2d at 350; *Stoll,* 122 Wis. 2d at 515. Knowledge of the facts of record, especially critical ones, may and will be charged against Atty. Stern. *See, Riley v. Isaacson,* 156 Wis. 2d 249, 253–254, 456 N.W.2d 619 (Ct. App. 1990).[14]

Atty. Stern's next allegation of misrepresentation and fraud in the abuse of process claim against Atty. Perry was that she failed to cite any statutes in the application which would justify the body attachment.[15] He also alleged that the body attachment was improper because neither sec. 885.11, Stats., nor sec. 818.02(1)(f), Stats., supports such a usage, and implicitly, that Atty. Perry knew this. Specifically, he argued that sec. 818.02(1)(f), Stats., permits arrest only when seeking to "determine" paternity or "establish" a child support or maintenance obligation, but does not permit arrest merely to "modify" an existing obligation.[16]

---

[14] The court of appeals in *Riley,* at 256, comments that, determining how much investigation *should* have been done will depend upon the nature of the issues involved and the stakes of the case. We would add, however, that the question of how much investigation should have been done is a mixed question of law and fact, with what was done being a question of fact, and whether it was sufficient remaining a question of law.

[15] Atty. Stern alleged that atty. Perry was "negligent" because "neither the defendant, Evelyn Defatte, or her attorney cited statues *[sic]* and laws which would permit any citizen of this state to be apprehended on a writ of body attachment because of lack of service under circumstances which existed in this case . . .."

[16] Specifically, paragraph eleven of the Complaint stated: "That the plaintiff was neither in contempt of court pursuant to Section 855.11 *[sic],* Wis. Stats., nor was it justified to arrest pursuant to Section 818.02, Wis. Stats., because this proceeding

We disagree. Besides the fact that Atty. Perry was under no obligation to cite statute sections and did not, Atty. Stern misperceives the issue. The question is not whether the court's actions were proper, but whether Atty. Perry's actions were proper.

The question Atty. Stern should have addressed before alleging abuse of process against Atty. Perry was *not* whether Atty. Perry was absolutely correct in applying for the body attachment under the statutes in question—even assuming she suggested the statutes to use—but whether her actions were "fairly debatable." The standard for assessing attorney conduct was reported in *Strid,* 111 Wis. 2d at 429. An attorney is immune from liability to third parties so long as the attorney pursues in good faith his or her client's interests on a matter "fairly debatable" in the law. *See also, Sell,* 163 Wis. 2d at 777; *Radlein,* 117 Wis. 2d at 622. Thus, much of Atty. Stern's argument which might be relevant as against another party or entity is irrelevant against Atty. Perry.

Atty. Stern is correct that the statute says only "establish" and does not say "modify" explicitly. However, that does not end the inquiry. The question Atty. Stern should have asked before bringing a claim of abuse of process was whether Atty. Perry's use of the statute was "fairly debatable." We conclude that it obviously was. Besides the fact that invocation of the statute for a modification order would likely be found "fairly debatable" even if no cases had addressed the issue, we note that there was case law speaking to this question. In March of 1987, months prior to Atty. Stern's allegations of fraud against Atty. Perry, the court of appeals in *State ex rel. Jeske v. Jeske,* 138 Wis.

was not a proceeding to *determine* paternity or *establish* a child support or maintenance obligation . . .."

249

2d 268, 270, 405 N.W.2d 757 (Ct. App. 1987), construed language similar to that in sec. 818.02(1)(f), Stats., and found that "establish or enforce" within sec. 46.25(7), Stats., also included orders to "modify" child support. This court affirmed that result in *State ex rel. Jeske v. Jeske,* 144 Wis. 2d 364, 370, 376, 424 N.W.2d 196 (1988).

We note in the record that Atty. Stern admitted he had not read the *Jeske* (court of appeals') case. While failure to be abreast of all the relevant cases will not necessarily make a claim frivolous, the fact that Atty. Stern was not aware of the cases making Atty. Perry's position "fairly debatable" does not create a basis for his claim where none exists. Again, this is the type of information which may and will be charged against Atty. Stern.

Finally, Atty. Stern charged that Atty. Perry had misled the court because she represented that due diligence had been made in the attempt to serve Mr. Sell when it had not been. Again, the question is whether the court was misled or defrauded. As noted above, Atty. Perry delivered the documents to Constable Rognerud so that they could be served upon Mr. Sell. Constable Rognerud attempted to contact Mr. Sell several times and left messages at his home. The Constable completed an affidavit describing his attempts at service and certifying that "after due and diligent search and inquiry," he could not locate Mr. Sell for service of the documents. Atty. Perry submitted this affidavit to the court along with the application for the body attachment. The court assessed its sufficiency and acted accordingly.

The court of appeals emphasized, without agreeing, that there was significant circumstantial evidence known to Atty. Stern to suggest that Atty. Perry had an

ulterior motive and had committed an abuse of process in obtaining the body attachment. However, this is putting the cart before the horse. Whether Atty. Perry had some ulterior motive or not is irrelevant unless it first be shown that she defrauded or misled the court and thereby perverted the process to create an unlawful result.

Abuse of process may lie even in those instances where the legal procedure has been set in motion in proper form, if the process is nevertheless perverted to accomplish an ulterior purpose for which it was not designed. *Maniaci,* 50 Wis. 2d at 299–300; *Strid,* 111 Wis. 2d at 426–427. However, misusing or abusing process will not be found for bad motive alone. "In order to maintain an action for abuse of process, the process must be used for something more than a proper use with a bad motive. The plaintiff must allege and prove that something was done under the process which was not warranted by its terms. The existence of an improper purpose alone is not enough, for this improper purpose must also culminate in an actual misuse of the process to obtain some ulterior advantage." *Thompson,* 72 Wis. 2d at 363; *Strid,* 111 Wis. 2d at 427.

Similarly, one may be subject to liability for false imprisonment if one instigates or participates in the unlawful confinement of another. However, the predicate is that some wrongful or illegal act must have been committed. No cause of action for false imprisonment will lie "[i]f the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, so that the arrest of the plaintiff is legally authorized . . ." *Maniaci,* 50 Wis. 2d at 295–296 (quoting PROSSER, LAW OF TORTS § 12, at 62 (Hornbook

251

series, 3d ed. 1964)). Thus for both allegations, we will not jump to consideration of an alleged ulterior motive until or unless some perversion or unjust manipulation of the process is shown. *See, e.g., Maniaci,* 50 Wis. 2d at 299–300.

■

We conclude that although there was a legal basis for making allegations of this type, the actual claims made were frivolous because Atty. Stern knew or should have known that there were no facts which could complete the elements required in the allegations as made. We therefore find that the claims made against Atty. Perry were frivolous from commencement within the meaning of subsection (3)(b) of sec. 814.025, Stats.

■

The final issue is assessment of costs on appeal. Claims for costs of frivolous appeals are governed by sec. 809.25(3), Stats.[17] The appellate court must make a determination whether an appeal is frivolous under sec. 809.25(3)(c).[18] The appellate court may make this determination as a matter of law. *J.J. Andrews, Inc. v Midland,* 164 Wis. 2d 215, 225–226, 474 N.W.2d 756 (Ct. App. 1991). However, if factual findings are

---

[17] **809.25 Rule (Costs and fees)** . . . **(3)** FRIVOLOUS APPEALS. (a) If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees and reasonable attorney fees under this section . . ..

[18] **809.25 Rule (Costs and fees)** . . . **(3)** FRIVOLOUS APPEALS . . . (c) In order to find an appeal or cross-appeal to be frivolous under par. (a), the court must find one or more of the following: . . . 2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

required, then a hearing must be held, because the appellate court cannot make such findings. *See, Tomah-Mauston Broadcasting v. Eklund,* 143 Wis. 2d 648, 659–660, 422 N.W.2d 169 (Ct. App. 1988).

We hold, under sec. 809.25(3)(c)2, Stats., that the appeal was frivolous as a matter of law. *See, In Matter of Estate of Koenigsmark,* 119 Wis. 2d 394, 399, 351 N.W.2d 169 (Ct. App. 1984); *Riley,* 156 Wis. 2d at 262. The test is whether the party or the party's attorney knew, or should have known, that the appeal was without any reasonable basis in law or equity. We affirm the circuit court's determination that these claims against Atty. Perry were frivolous at the commencement of the suit under sec. 814.025(3)(b), Stats., because there was no "reasonable basis in law or equity" for the claims made. Atty. Stern knew or should have known that no set of facts existed which would fulfill the elements of the allegations as made.

We therefore remand to the trial court for a determination of costs on the appeals and the present review by this court.

*By the Court.*—Decision of the court of appeals is reversed and cause remanded with directions to assess the costs and reasonable attorney fees incurred from commencement of the lawsuit through the appeals and this review and award such costs and fees to Atty. Perry and her law firm.