IN the MATTER OF the ATTORNEY FEES RE:

Yehuda ELMAKIAS, Plaintiff-Respondent,

v.

Michael WAYDA, Defendant,

Atty. David SPARER, Appellant.

Court of Appeals

*No. 98–3222. Submitted on briefs March 11, 1999.—Decided May 13, 1999.*

(Also reported in 596 N.W.2d 869.)

[redacted]

On behalf of the appellant, the cause was submitted on the briefs of *David R. Sparer* of *King Street Law Collective, Inc.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William A. Abbott* of *Bell, Gierhart & Moore, S.C.* of Madison.

Before Dykman, P.J., Eich and Deininger, JJ.

DYKMAN, P.J. Attorney David R. Sparer appeals from an order holding him liable for fees under § 814.025(3)(a), STATS.,[1] for pursuing frivolous claims on behalf of his client, Michael Wayda. He argues that there is no evidence to support the court's decision that

---

[1] Section 814.025(3), STATS., reads as follows:

In order to find an action, special proceeding, counterclaim, defense or cross complaint to be frivolous under sub. (1), the court must find one or more of the following:

(a) The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

(b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

he acted in bad faith, solely for the purpose of harassing or maliciously injuring Yehuda Elmakias. We disagree and affirm.

## BACKGROUND

This case stems from a highly contentious land-lord-tenant dispute. The following is a brief overview of the parties' relationship. In 1995, Michael Wayda signed a lease to rent residential property from Yehuda Elmakias. During his tenancy, Wayda violated various terms of the lease and engaged in substantial threatening and intimidating behavior toward Elmakias and his wife. Wayda restricted when Elmakias could show his unit to other potential tenants, and often the police needed to be present before he would allow Elmakias onto the property. There is a videotape of Wayda yelling at and threatening Mr. and Mrs. Elmakias when they attempted to enter his unit to conduct an inspection and make certain repairs, despite the fact that Wayda's attorney had already given permission for them to enter the premises for these purposes.

In November 1995, Wayda notified the city building inspector that Elmakias was in violation of the city housing code. The building inspector conducted an inspection and found two relatively minor problems with the unit, which he ordered Elmakias to fix.[2] In February 1996, Wayda, through his attorney, wrote a letter to Elmakias in which he made several complaints for lack of repair, failure to make promised repairs and other matters. Wayda also advised Elmakias in this letter that his failure to make these

---

[2] The order required Elmakias to: (1) properly vent the clothes dryer to the exterior of the building; and (2) repair the right side of the garage service door to open and close with normal force.

314

repairs created a right to rent abatement under § 704.07(4), STATS. Elmakias did not respond to the letter.

On March 14, 1996, Wayda filed suit against Elmakias in small claims court requesting rent abatement for the claims outlined in the February 1996 letter. On May 23, 1996, Elmakias filed a summons and complaint to evict Wayda for allegedly not paying the balance of his security deposit or his May rent, and for not responding to a list of compliance items requesting that he clean and restore the property to its original condition.

In his answer to the eviction action, Wayda stated that he placed the amounts owing into his attorney's trust account rather than paying them directly to Elmakias, and that he notified Elmakias of this fact in a letter. He also raised a counterclaim for retaliatory eviction, arguing that Elmakias was attempting to evict him because he had contacted the building inspector and filed a suit for rent abatement. Elmakias filed a reply arguing that Wayda's claims were frivolous.[3]

---

[3] In December 1996, Wayda amended his counterclaim for retaliatory eviction to request an amount greater than $5,000 in monetary damages. Elmakias responded to the amended counterclaim by arguing that his eviction action was justified:

> That plaintiff had every justification to terminate the lease of defendant in this case, including in particular his failure to pay rent. In addition, he failed to pay the security deposit after several demands including the threat of eviction, he breached the lease by actually renting the premises to other parties, and having two dogs in violation of the lease which destroyed the carpeting in the premises and left a smell in the garage which cannot even now be removed from the cement, and by building a fence taller than six [feet] without permission of plaintiff in violation of the lease which resulted in plaintiff getting sued by Patrick Affeldt for putting up a spite fence, for destroying the grass in the backyard through his dogs, for building another fence in the backyard to enclose his dogs

Wayda made a subsequent motion to dismiss Elmakias's eviction action on the grounds that he was given inadequate notice under the terms of the lease. The court agreed and dismissed Elmakias's eviction action, but it did not dismiss Wayda's counterclaim for retaliatory eviction.

On December 18, 1996, Elmakias again replied to Wayda's counterclaim and raised his own counterclaim in which he asserted that Wayda had built a fence higher than six feet tall without his knowledge or permission, which led Wayda's neighbor (Affeldt) to raise a nuisance claim against Elmakias. Elmakias states that he was forced to defend against this claim at a cost of around $5,000.

In March 1997, Elmakias and Wayda each moved for partial summary judgment regarding the other's claims. Wayda moved for summary judgment on the date that the lease terminated so as to respond to Elmakias's claims that he was responsible for rents and other costs allegedly incurred after that date. He also moved for summary judgment regarding Elmakias's claim that his suit against Affeldt would have settled had Wayda not built the "spite" fence that blocked Affeldt's view. The court denied the former and partially granted and denied the latter. The court said that Elmakias could present a claim that Wayda's installation of the fence was a lease violation, but that he could not recover damages for the effect the fence installation had on Elmakias's separate lawsuit against Affeldt. Elmakias moved for summary judgment on several of Wayda's claims, most notably his counterclaim for retaliatory eviction. That claim was denied.

and the like. Each and every one of the above constituted a just cause for eviction.

At trial, the court ruled in Elmakias's favor on all remaining claims. Elmakias and Wayda then filed post-trial motions alleging that the other violated § 814.025, STATS., by commencing frivolous actions. The court denied Wayda's motion, but granted Elmakias's motion.[4] In its decision to award fees, the court made the following observations:

> From what was a nasty, but essentially clear-cut landlord/tenant dispute has grown a legal briar patch of defendant's creation. Everyone associated with this case seems to have become ensnared by its ever-expanding complexities, increasingly harsh accusations, and endless litigation. Particularly as viewed by the defendant and his counsel, no amount of court attention is enough; no number of words or pieces of paper is too many.
>
> The defendant, himself, admitted that he wanted "leverage" against Mr. Elmakias. It is clear after days and days of testimony and thousands of written words, that he used not just one, but several, shotguns in fashioning his legal strategy. Mr. Wayda and his lawyer employed what the Wiscon-

---

[4] The trial court said:

[T]wo years ago Judge Bartell suggested that the dispute between these parties be settled by [Wayda] simply by paying [Elmakias] the rent due and the second half of the security deposit already held in Attorney Sparer's trust account. It was [Wayda], not [Elmakias], who rejected what, after all the claims have been litigated can be viewed only as an eminently reasonable proposal. It is distressing to contemplate how much work, court time, expense, and aggravation could have been spared had [Wayda] not been determined to use the legal system for some sort of revenge.

. . . .

. . . . Given the relatively early disappearance of this fence issue from this case, counsel's having devoted more than twelve hours to it is not a reasonable response. . . . The phrase "excessive litigation" barely begins to describe what [Wayda] presented throughout this case.

sin Supreme Court has labeled "win-at-all-costs, scorched-earth tactics." *Cheveron Chem. Co. v. Deloitte & Touche*, 176 Wis. 2d 935, 945, 501 N.W.2d 15, 19–20 (1993). An overview of this case shows their effort to overwhelm their adversary, and perhaps this court as well. It cannot have been an accident that many of the Ag. Code and Ordinance violations claimed by [Wayda] also meant attorneys fees or multiplied damages if he prevailed. [*See Fidelity and Deposit Co. v. Krebs Engineers*, 859 F.2d 501, 506 (7th Cir. 1988)]

The court awarded fees under § 814.025(3)(a), STATS., and said:

It is calculated that the fees incurred by [Elmakias] . . . total $11,161.00. It is the specific finding that these fees are fair and reasonable and that they were incurred by [Wayda's] continuation ". . . in bad faith, solely for the purpose of harassing or maliciously injuring" Yehuda Elmakias. It is further found that of the sum, defendant Michael Wayda is personally responsible for $9,161.00, and his attorney, David Sparer, is personally responsible for $2,000.00 for his contribution by continuing to pursue the claims and defenses of [Wayda] when he should have known they were meritless and being maintained for improper purposes. . . .

Sparer appeals from the trial court's order to hold him personally liable for $2,000.00 of Elmakias's attorneys fees.

## DISCUSSION

Sparer appeals from the court's decision to hold him personally liable for fees under § 814.025(3)(a), STATS. Section 814.025(3)(a), STATS., allows courts to assess costs and fees against a party or that party's

attorney for commencing, using, or continuing a frivolous action, special proceeding, counterclaim, defense or cross-complaint in bad faith, solely for purposes of harassing or maliciously injuring another. Sparer argues that because the trial court made no specific finding as to how he personally acted with the sole motive or purpose of harassing or injuring Elmakias, we must reverse.

■

Whether an attorney or a party violated § 814.025(3)(a), STATS., is a question analyzed under a subjective standard. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 235–36, 517 N.W.2d 658, 663 (1994). The trial court must determine what was in the person's mind and whether his or her actions were deliberate or impliedly intentional regarding harassment or malicious injury. *See id.* at 236, 517 N.W.2d at 663–64. The findings must be specific, because " '[t]he [frivolous claims] statute does not allow the trial judge to conclude frivolousness or lack of it without findings stating which statutory criteria were present . . . .' " *Id.* at 236, 517 N.W.2d at 664 (quoting *Sommer v. Carr*, 99 Wis. 2d 789, 792, 299 N.W.2d 856, 857(1981)).

Whether a party or attorney made a frivolous claim in violation of § 814.025(3)(a), STATS., presents a mixed question of law and fact. *See Stern*, 185 Wis. 2d at 236, 517 N.W.2d at 664. The court's findings as to "what was said, what was done, what was thought, and reasonable inferences drawn therefrom, are questions of fact." *Id.* Such findings will not be upset unless they are clearly erroneous. *See* § 805.17(2), STATS. However, the ultimate conclusion of whether the facts cited fulfill the frivolous standard is a question of law that we review de novo. *See Stern*, 185 Wis. 2d at 236, 517 N.W.2d at 664.

Because the inquiry under § 814.025(3)(a), STATS., "is subjective, and not generally susceptible to direct proof, the state of mind of the person 'must be inferred from the acts and statements of the person, in view of the surrounding circumstances.' " *Stern*, 185 Wis. 2d at 236–37, 517 N.W.2d at 664 (quoting *Pfeifer v. World Serv. Life Ins. Co.*, 121 Wis. 2d 567, 569, 360 N.W.2d 65, 66 (Ct. App. 1984)). We must accept a reasonable inference drawn by the trial court from established facts even if more than one reasonable inference may be drawn. *See id.* at 237, 517 N.W.2d at 664. Whether an inference is reasonable is itself a question of law. *See id.*

Sparer argues that based on *Stern*, the court is required to find that *he* acted with the *sole* purpose of harassing or injuring Elmakias, and he contends that not only did the court not make this specific finding, but it made no finding that harassment or injury played *any part* in his conduct.[5] Sparer therefore argues that the trial court's decision cannot stand. We disagree.

The court made the following findings regarding Wayda's abatement and retaliation claim:

> The bogus nature of the "abatement" claim was patently clear the first day of trial. In fact, relatively strong language was used in the ruling eliminating it from further consideration in this case. <u>BOTH</u> Mr. Wayda and Mr. Sparer should have known how the "facts" they presented made a mockery of legitimate tenant claims for abatement for real and serious deprivation of critical elements of their living space. This knowledge should have kept them

---

[5] Sparer contends that the trial court was limited to the factual assertions contained in Elmakias's motion in making its decision. He cites no support for this assertion and we reject it.

from pursuing both the abatement and the retaliation claims.

Regarding this issue, the court said the following:

> This judge took an action that she has rarely taken. I stopped the proceedings, demanded an offer of proof as to what, if anything, in addition to the nitpicking being presented was claimed as grounds for abatement. When nothing else could be conjured by this defendant, it was summarily decided that there was no cognizable claim for abatement. As a consequence, pursuant to the summary judgment ruling, [Wayda's] charge of retaliation also failed.

The court then addressed Wayda's claim for unauthorized entry:

> Regardless of whether [Wayda] claimed [twelve] or four unauthorized entries by [Elmakias], the fact that this charge was never abandoned, forcing [Elmakias] to the effort of reviewing his every entry to determine its propriety. Despite this, if [Wayda] presented proof on point for any, other than one possible such entry, it was not apparent to either [Elmakias] or the court. The irony is that this issue backfired on [Wayda] by revealing his outrageous, totally-unjustified behavior on the videotaped and authorized entry by [Elmakias]. That fact adds further justification for finding that by continuing to press this claim was frivolous and [Wayda's] persistence to be solely for harassment or intimidation.

The court held Sparer liable under § 814.025(3)(a), STATS., for continuing to pursue Wayda's claims and defenses when he should have known they were meritless *and being maintained for improper purposes*. The best example to support the court's decision is found in

321

its discussion regarding Wayda's claims for unauthorized entry.

Wayda claimed that Elmakias entered his unit without his authorization; however, he offered no evidence to support this claim other than a videotape, and that tape showed an *authorized* entry. The court concluded after viewing the videotape and seeing what it characterized as "threatening" behavior on the part of Wayda toward Elmakias, that Wayda's sole motive for pursuing the claim was to harass or intimidate. The court was satisfied that Sparer was aware that his client's claim had no other purpose than to harass or injure Elmakias, and therefore decided to hold him accountable.

Sparer would have us believe that he was merely representing his client's interests, and that zealous representation may include making some claims that are not entirely clear in the law or on the facts, at least when commenced. *See Stern*, 185 Wis. 2d at 235, 517 N.W.2d at 663. The flaw in Sparer's argument is that § 814.025(3)(a), STATS., prohibits not only the commencement of a frivolous claim but the continuation of a frivolous claim as well. In this case, the court specifically found that Wayda's unauthorized entry claim was continued solely for the purpose of harassment or intimidation. Sparer had evidence (i.e., the videotape) after the suit was commenced that the "unauthorized" entry was, in fact, authorized, and that his client had a history of harassing and intimidating Elmakias, yet he continued to proceed with the unlawful entry claim. An attorney who knows that his or her client is asserting a claim solely to harass or injure the opposing party, and still agrees to proceed with that claim, will be held to have the same motive as his or her client. To hold

322

otherwise would undermine the purpose of the statute, which is to deter individuals from using the legal system to harass or injure others.

The court inferred from the evidence that Sparer was aware that Wayda's claims, at least his unauthorized entry claims, were commenced and continued for the sole purpose of harassment and intimidation, and we conclude that those inferences were reasonable. We are therefore satisfied that Sparer's actions and inactions violated § 814.025(3)(a), STATS. Accordingly, we affirm.

*By the Court.*—Order affirmed.