Donald G. TRACY and Shirley Tracy, Petitioners-Appellants,

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent.

Court of Appeals

*No. 85-0700. Submitted on briefs July 8, 1986.—Decided August 7, 1986.*

(Also reported in 394 N.W.2d 756.)

For the petitioners-appellants the cause was submitted on the briefs of *Donald G. Tracy* and *Shirley Tracy*, pro se, of Janesville.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *F. Thomas Creeron, III*, assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Donald and Shirley Tracy appeal from a judgment affirming an order of the Tax Appeals Commission. The commission dismissed the Tracys' petition to overturn assessments of income tax liability made by the Department of Revenue for the years 1980, 1981 and 1982. The trial court also ruled that the judicial review proceedings brought by the Tracys were frivolous within the meaning of sec. 814.025, Stats., and awarded costs to the department.

The Tracys raise several "issues" on appeal, many of which take the form of a general protest against the idea of income taxation. We resolve all issues against the Tracys; and, even though we consider the appeal frivolous, we nonetheless deem it appropriate to address each argument, however briefly, in hopes of deterring the filing of similarly baseless tax protests.

The underlying facts are not in dispute. The Tracys filed 1980, 1981 and 1982 Wisconsin income tax returns,

entering the words "none" or "object" on nearly every line. In August, 1983, the department issued assessments against the Tracys for the three years pursuant to sec. 71.11(4), Stats.[1] The assessment notice explained that because they had failed to file properly completed returns in each of the three years, the department had estimated their incomes and calculated the estimated taxes due.

The Tracys filed a "protest," claiming that their refusal to disclose their incomes and otherwise complete the returns was protected by the fifth amendment inasmuch as disclosure might subject them to the "penalty" of tax liability. The department treated the document as a petition for redetermination and denied it.

The Tracys then filed a paper entitled "Notice of 'Special' Continuing Appearance and Appeal," asking that the assessments be voided and demanding a hearing before the Tax Appeals Commission. The purpose of the hearing, according to the Tracys, would be to give the department "ONE LAST CHANCE to proffer evidence which tends to PROVE—or SHALL PROVE— existence of JURISDICTIONAL FACTS by which said DENIED, OBJECTED TO, and CHALLENGED Jurisdiction can even EXIST." The document asserted their "right" to be free from state taxation and stated their objection to "the FORCED use of Corporate negotiable securities of the Federal [PRIVATE] Reserve [PAPER] System [CORPORATION]" (brackets in original), on grounds that gold and silver coins are the only form of legal tender authorized by the constitution.

---

[1] Section 71.11(4), Stats., authorizes the department to assess estimated taxes against any person who is required to file a return and who files a return that does not disclose his or her "entire net income."

The department moved for summary judgment, arguing that there was no legal basis for the relief sought by the Tracys. The motion was accompanied by an affidavit outlining the facts surrounding the Tracys' returns and the resulting assessments. At the hearing on the motion, the Tracys argued: (1) that the "paper money" they earned during the years in question was not legal tender and thus not taxable; (2) that the wages they received were in equal exchange for their labor and thus there was no taxable "profit"; (3) that the tax laws do not apply to them; and (4) that the department had no authority to conclude that they owed any taxes to anyone.

The commission granted the department's motion for summary judgment affirming the assessments. The Tracys filed a petition for review, raising essentially the same arguments they made to the commission, as well as challenges to various procedural rulings. The circuit court affirmed the commission's decision and also determined that the Tracy's petition was frivolous under sec. 814.025, Stats., assessing them attorney fees and costs totaling $1,686.25.

## I. TAXATION OF "COMMON LAW OCCUPATIONS"

The Tracys argue first that they were "born free" and, as free citizens, are "superior to [their] government." They equate pursuit of employment with "pursuit of life and liberty" which they maintain is an inalienable right not subject to taxation. Other than a reference to their understanding of the purpose for which the Revolutionary War was fought, they offer no authority in support of their argument.

156

■

We are satisfied that no such authority exists. In *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943), the Supreme Court, agreeing that a state may not tax the exercise of a right or privilege protected by the Constitution—there the "privilege of carrying on interstate commerce"—nonetheless recognized the right of a state to tax the income derived from that commerce. The Tracys' argument is without merit.

So, too, is their briefly stated contention, apparently based on *Texas v. United States*, 384 U.S. 155 (1966), where the court struck down a state poll tax, that a state may not tax an "unenfranchised individual." We fail to see even the remotest relationship between the issues in a poll tax case and those raised on this appeal.

## II. "ARTICLE III JUDGES"

■

Article III, sec. 2, of the United States Constitution provides in part that: "In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction. In all other cases [it] shall have appellate jurisdiction . . . ." The Tracys, equating "original" jurisdiction with "exclusive" jurisdiction, argue that because this case involves a dispute between a state and one of its citizens, only the United States Supreme Court has jurisdiction to hear it.

But, the court's original jurisdiction under art. III, sec. 2, is not exclusive. *United States v. California*, 297 U.S. 175, 187 (1936); *Börs v. Preston*, 111 U.S. 252, 261 (1884). We note, too, that the tenth amendment

157

reserves to the states "[t]he powers not delegated to the United States . . . nor prohibited by [the Constitution] to the States." The adoption of tax laws, and the creation of quasi-judicial agencies to administer them, is neither delegated to congress nor prohibited to the states by the constitution.[2]

### III. ARE THE TRACYS "PERSONS"?

Citing a 1923 source,[3] the Tracys assert that the word "person" in the state income tax law is defined to include "any individual, firm, copartnership, and every corporation . . . organized for profit . . . ." They argue that because they are not themselves "organized for profit," they are not subject to taxation. Not only do they misread the outdated text, ignoring the comma after "individual," but the stated definition is nowhere to be found in any relevant section of the current tax laws.

Section 71.10(2)(a)5, Stats. (1983), requires "every natural person domiciled in this state" who has a gross income of $3,200 or more to file a tax return. In addition, sec. 71.10(2)(c) authorizes the Department of Revenue to require "any person" to file a return. The Tracys are "natural persons," and there is no dispute that they resided in Janesville, Wisconsin, during 1980, 1981 and 1982. The department, pursuant to the powers granted by statute, determined that the Tracys had incomes in

---

[2] Although appellants argue that art. IV, sec. 26 of the Wisconsin Constitution is applicable to this issue, we fail to see the relevance.

[3] H. Nelson, *The Wisconsin Income Tax Law: Interpretation, Rulings and Court Decisions*, 10 (1st ed. 1923).

excess of $3,200 in those years, and they do not appear to challenge that fact. The argument that they are not "persons" as defined in sec. 71.10 is groundless.

## IV. RATIFICATION OF THE SIXTEENTH AMENDMENT

The Wisconsin statutes do not themselves define "income." Rather, sec. 71.02(2), Stats., adopts the Internal Revenue Code definition: "[A]ll income from whatever source derived." 26 U.S.C. sec. 61(a). The Tracys assert that the sixteenth amendment, the source of the federal income tax, is null and void for lack of proper ratification by the states and proper certification by the secretary of state. Because the federal tax laws were adopted under the authority of the sixteenth amendment, the Tracys argue that they, too, are void.

The purported basis of the Tracys' argument was discussed at some length in *Mitchell v. Wis. Dept. of Revenue*, No. 85-0296, slip opinion (Wis. Ct. App. June 19, 1986) (publication ordered July 31, 1986), and we need not repeat it here. As we said in *Mitchell*, the issue is nonjusticiable, and the "improper ratification" argument has been uniformly rejected wherever and whenever it has been raised. *Id.* at 3.

## V. ARE WAGES TAXABLE?

The Tracys, referring indirectly to a statement in a 1916 case[4] in which "income" is described as "profit or

---

[4] The case, *State ex rel. Wis. Trust Co. v. Widule*, 164 Wis. 56, 159 N.W. 630 (1916), is referred to in *Nelson, supra* note 2.

159

gain derived from labor," argue that because their wages represent an equal exchange for their labor, there is no "profit or gain," and thus they cannot be taxed.

As we have said, today's tax laws empower the State of Wisconsin to tax "all income," no matter from what source it may be derived. The argument that the government lacks power to tax compensation for personal services was recognized as "stale" and "meritless" in *Lonsdale v. C.I.R.*, 661 F.2d 71, 72 (5th Cir. 1981). We agree.

## VI. JUDICIAL SUBSTITUTION AND DISCOVERY

■ The Tracys assert that they filed a request for substitution pursuant to sec. 801.58, Stats., and that the assigned judge did not immediately recuse himself but "continued to order briefs and set dates." While they argue broadly that they were denied due process, the Tracys do not suggest how they may have been prejudiced by the judge's actions, nor do they indicate what relief they seek. We agree with the department that this unexplained and undocumented argument should be rejected.

■ The department frequently seeks information from employers of persons under investigation for possible violation of the tax laws. Apparently, such a letter was sent to Donald Tracy's employer, and he contends that the department has no authority to do so. He particularly objects to the department's use of the phrase "by summons authority," arguing that the form of the letter does not comply with the requirements of sec. 804.09(2), Stats.

First, the letter is not part of the record. Second, sec. 804.09, Stats., is a procedural statute setting forth the steps to be taken to obtain documents from an opposing party in a civil lawsuit. It has nothing to do with the authority of the Department of Revenue to seek and obtain information. That authority is provided by sec. 73.03(9), Stats., which gives the department the power to summon witnesses and require the production of records "relating to any matter which the department shall have authority to investigate or determine."

The Tracys also contend that the Tax Commission improperly refused to compel the department to answer interrogatories. Here, too, the argument is largely unexplained. ██

The record indicates that, at the conclusion of oral arguments on the department's motion for summary judgment, the Tracys informed the presiding commissioner that somewhere in the commission's file was a "motion . . . to ask the [department] to answer . . . interrogatories," and that they needed the information "to prepare [their] case." The commissioner noted that the file contained no such motion and asked the Tracys whether they were requesting additional time for interrogatories. Shirley Tracy responded "Yes" and that ended the matter. Like the commission, we have been unable to find any such motion in the record. As a result, we cannot consider the argument further, other than to note that the commission's entry of summary judgment rendered further hearings unnecessary, thus mooting any discovery issues.

## VII. FRIVOLOUS COSTS

The trial court concluded that the petition for review was frivolous within the meaning of sec. 814.025, Stats., in that the Tracys knew or should have known that the action was "without any reasonable basis in law" and could not be supported by a good faith argument for reversal or modification of existing law.

In addition to the issues discussed above, the Tracys advanced other arguments before the circuit court, including: (1) that only wages paid in gold or silver coin are subject to taxation; and (2) that the fifth amendment shields them from any penalty for failing to file tax returns or otherwise refusing to provide information regarding their income.

Those arguments, like the other positions advanced by the Tracys—however novel and attractive they may appear to tax protesters—have been consistently rejected by the courts. *See,* for example, *United States v. Verkuilen,* 690 F.2d 648, 654 (7th Cir. 1982) (unsupported assertion of fifth amendment privilege is no justification for failure to file tax returns); *United States v. Daly,* 481 F.2d 28, 30 (8th Cir. 1973) (argument that gold or silver coin is the only legal tender held "clearly frivolous"); *Kauffman v. Citizens State Bank of Loyal,* 102 Wis.2d 528, 533, 307 N.W.2d 325, 328 (Ct. App. 1981) (federal reserve notes are legal tender in Wisconsin).

The Tracy's other arguments are equally frivolous. It is clear beyond peradventure that: (1) wages constitute taxable income; (2) persons are "persons" within the meaning of the tax laws; (3) the constitution does not prohibit a state from taxing wages earned in the

pursuit of one's occupation; (4) the validity of the ratification of the sixteenth amendment is a nonjusticiable issue; and (5) jurisdiction over disputes between citizens and agencies of their government is not confined to the United States Supreme Court. We have no hesitation in concluding that the challenges to these propositions lacked any reasonable basis in law, and that, even as laypersons, the Tracys should have known that this was so.[5]

The same may be said for the procedural questions. The Tracy's arguments were generally unexplained and undocumented, and the true state of the law could have been ascertained with much less effort than it took to devise the challenges.

Costs and fees were properly assessed against the Tracys in the circuit court proceedings.[6] Their appeal is little more than a rehash of the arguments made to the department, the commission and the court below. It was frivolous in its entirety within the meaning of sec. 809.25(3), Stats.

Trial and appellate courts are faced with an increasing number of cases of this type. Not only are the arguments, however imaginative or far-fetched, always the same, they often are made in identical language, and many of the "source materials," motions and briefs appear to be no more than photocopies of those filed in other cases in this and other jurisdictions. Even beyond

---

[5] In *Biermann v. C.I.R.*, 769 F.2d 707, 708 (11th Cir. 1985), the court found essentially the same arguments to be "patently frivolous," noting that they "have been rejected by courts at all levels of the judiciary."

[6] While the Tracys argue briefly that the costs should not have been taxed, they do not challenge the reasonableness of the amount set by the trial court.

their facial invalidity, the uniform rejection of these arguments over the years render them frivolous even where, as here, they are advanced *pro se.*

We affirm and remand to the circuit court for the purpose of determining the amount of attorney fees to be awarded to the department on this frivolous appeal.

*By the Court.*—Judgment affirmed and cause remanded with directions.