Warner Jackson, Jennifer Evans, Wendell Harris, The Reverend Andrew Kennedy, Rabbi Isaac Serotta, Ceil Ann Libber, Father Thomas J. Mueller, Reverend John N. Gregg, Diane Brewer, Colleen Beaman, Mary Morris, Penny Morse, Kathleen Jones and Philip Jones, Plaintiffs-Respondents,

v.

John T. Benson, Superintendent of Public Instruction, Department of Public Instruction and James E. Doyle, Defendants-Appellants-Petitioners,

Marquelle Miller, Cynthia Miller, Angela Gray, Zachery Gray, Shon Richardson, George Richardson, Latrisha Henry, Faye Henry, Reigne Barrett, Valerie Barrett, Candice Williams, Senton Williams, Clintrai Giles, Sharon Giles, Intervenors-Defendants-Appellants,

Parents For School Choice, Pilar Gonzalez, Dinah Cooley, Julie Vogel, Kate Helsper, Blong Yang, Gail Crockett, Yolanda Lassiter and Jeanine Knox, Intervenors-Defendants-Appellants-Petitioners.

Milwaukee Teachers' Education Association, by its President, M. Charles Howard, Michael Lengyel, Donald Lucier, Tracy Adams, Milwaukee Public Schools Administrators and Supervisors Council, Inc., by its Executive Director, Carl A. Gobel,

24

People for the American Way, by its Executive Vice President and Legal Director, Elliott M. Minceberg, John Drew, Susan Endress, Richard Riley, Jeanette Robertson, Vincent Knox, Bertha Zamudio, James Johnson, Robert Ullman and Sally F. Mills, Plaintiffs-Respondents,

v.

John T. BENSON, Superintendent of Public Instruction, Department of Public Instruction and James E. Doyle, Defendants-Appellants-Petitioners,

Marquelle MILLER, Cynthia Miller, Angela Gray, Zachery Gray, Shon Richardson, George Richardson, Latrisha Henry, Faye Henry, Reigne Barrett, Valerie Barrett, Candice Williams, Senton Williams, Clintrai Giles, Sharon Giles, Intervenors-Defendants-Appellants,

PARENTS FOR SCHOOL CHOICE, Pilar Gonzalez, Dinah Cooley, Julie Vogel, Kate Helsper, Blong Yang, Gail Crockett, Yolanda Lassiter and Jeanine Knox, Intervenors-Defendants-Appellants-Petitioners.

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Felmers O. Chaney, Lois Parker, on behalf of herself and her minor child, Rashaan Hobbs, Derrick D. Scott, on behalf of himself and his minor children, Deresia C.A. Scott and Desmond L.J. Scott, Constance J. Cherry, on behalf of herself and her minor children,

25

Monique J. Branch, Monica S. Branch, and William A. Branch, Plaintiffs-Respondents,

v.

John T. BENSON, Superintendent of Public Instruction of Wisconsin, in his official capacity, Defendant-Appellant.

Supreme Court

*No. 97–0270. Decided July 9, 2002.*

2002 WI 90

(Also reported in 647 N.W.2d 815.)

¶ 1. PER CURIAM. Respondents, Carl Gobel, Warner Jackson, Father Thomas Mueller, and Wendell Harris, and Attorney Ed Garvey and the law firm of Garvey, Stoddard, S.C. move the court for reconsideration of Part II of its opinion in *Jackson v. Benson,* 2002 WI 14, 249 Wis. 2d 681, 639 N.W.2d 545,[1] finding the motion to vacate the court's 1998 decision in the case to be frivolous and remanding the matter to the Dane County Circuit Court for a determination of the amount of reasonable attorney fees and costs.

---

[1] A copy of the February 19, 2002 opinion is attached to this decision as Appendix B.

27

■ 2. Respondents Gobel, Jackson, Mueller and Harris have also filed a separate motion to modify the sanctions order to remove them from the obligation to pay any sanctions which might ultimately be imposed. The State of Wisconsin has expressly indicated it does not oppose a modification of the sanctions order to exclude the individual respondents from any obligation to pay sanctions, and no party has objected to such a modification.

■ 3. The motion to modify the sanctions order to remove respondents Gobel, Jackson, Mueller and Harris from any obligation to pay sanctions is granted.

■ 4. The motion for reconsideration of Part II of this court's opinion, which found the motion to vacate frivolous and remanded the matter to the Dane County Circuit Court for a determination of the amount of reasonable attorney fees and costs, is denied without costs.

■ 5. The dissent deserves some response. We all agree, including the dissenting justice, that "[t]he respondent's inordinate delay in filing the motion to vacate *mocks* the fundamental and vital principle of finality, which is essential to the operation of a society governed by law." *Jackson v. Benson,* 2002 WI 14, ¶ 22, 249 Wis. 2d 681, 639 N.W.2d 545. (Emphasis added.) Accordingly, four of the five members sitting on this case found the respondent's motion frivolous and awarded fees, costs, and attorney fees.

■

■ 6. Both Wis. Stat. § 809.25(3)(a) and § 814.025(1) are mandatory. *See* § 809.25(3)(a) ("If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party

28

costs, fees and reasonable attorney fees under this section."); § 814.025 ("If an action . . . is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees."); *see also Jandrt v. Jerome Foods, Inc.,* 227 Wis. 2d 531, 576, 597 N.W.2d 744 (1999); *Sommer v. Carr,* 95 Wis. 2d 651, 653–54, 291 N.W.2d 301 (Ct. App. 1980), *rev'd on other grounds,* 99 Wis. 2d 789, 299 N.W.2d 856 (1981). Every single reported case in the last 20 years involving a finding of frivolousness has resulted in the award of attorney fees and costs. We have searched for any case involving a finding of frivolousness in which attorney fees and costs were not awarded. We have found none. *See, e.g., Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 840–42, 501 N.W.2d 1 (1993); *Elmakias v. Wayda,* 228 Wis. 2d 312, 318–23, 596 N.W.2d 869 (Ct. App. 1999); *Chase Lumber & Fuel Co., Inc. v. Chase,* 228 Wis. 2d 179, 206–10, 596 N.W.2d 840 (Ct. App. 1999); *Gardner v. Gardner,* 190 Wis. 2d 216, 248–51, 527 N.W.2d 701 (Ct. App. 1994); *Schapiro v. Sec. Sav. & Loan,* 149 Wis. 2d 176, 187–89, 441 N.W.2d 241 (Ct. App. 1989); *Tracy v. DOR,* 133 Wis. 2d 151, 162–63, 394 N.W.2d 756 (Ct. App. 1986); *Wengerd v. Rinehart,* 114 Wis. 2d 575, 580–84, 338 N.W.2d 861 (Ct. App. 1983).

¶ 7. JON P. WILCOX, ANN WALSH BRADLEY, and DIANE S. SYKES, JJ., did not participate.

¶ 8. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* I joined Part I of the court's decision of February 19, 2002, denying the petitioners'[1] motion to vacate this court's decision in *Jackson v.*

---

[1] Carl Gobel, Warner Jackson, Father Thomas Mueller, Wendell Harris, Attorney Ed Garvey, and the law firm of Garvey

*Benson.*[2] *Jackson* upheld the constitutionality of the "school voucher" law. The petitioners do not challenge this part of the decision.

¶ 9. I dissented from Part II of the February 19, 2002, decision. That decision sanctioned the petitioners for bringing the motion to vacate, which the court declared frivolous. The petitioners seek reconsideration of Part II of the decision. The majority denies reconsideration.

¶ 10. I continue to maintain that the court has erred in declaring the petitioners' motion frivolous and in imposing sanctions on the petitioners in this case.[3] I have two reasons for dissenting here:

¶ 11. First, the court's decision declaring the petitioners' motion frivolous and imposing sanctions is erroneous on its face as a matter of law. The court has failed to justify the declaration of frivolousness and the imposition of sanctions as required by either Wis. Stat. § 809.25(3)(c) or § 802.05(1)(a).

¶ 12. Second, the declaration of frivolousness and the imposition of sanctions in this case undermines

---

& Stoddard, S.C., are the petitioners requesting the court to reconsider and withdraw Part II of its February 19, 2002, decision.

[2] *Jackson v. Benson,* 2002 WI 14, 249 Wis. 2d 681, 639 N.W.2d 545.

[3] The court relieves the individual petitioners from the sanctions, not because the court concludes it erred, but because of the parties' agreement.

30

confidence in the legitimacy of this court's decision-making process and the integrity of this court as an institution.

## I

¶ 13. Statutes, rules, and case law govern the finding of frivolousness and the imposition of sanctions. This court did not adhere to the applicable law in the present case.

¶ 14. The court addressed the issue of frivolousness and sanctions in the final two paragraphs of its decision. I have appended the entire two-paragraph opinion on frivolousness and sanctions to this dissent so readers can easily judge for themselves the court's failure to make findings or present any reasoning or justification for its finding of frivolousness or the imposition of sanctions (*see* Appendix A).

¶ 15. In its finding of frivolousness and in its imposition of sanctions, the court relies on Wis. Stat. § 809.25(3)(c), as the State's private counsel urged.[4] As a condition to imposing sanctions under § 809.25(3)(c), this court must make one of two findings:

(1) The motion was filed, used, or continued "in bad faith, solely for purposes of harassing or maliciously injuring another";[5] or

---

[4] The entire argument of the State's private counsel appears in the Memorandum in Opposition to Motion to Vacate and Motion for Attorney Fees and Costs Pursuant to Wis. 2d 809.25(3) at 32–33.

[5] Wis. Stat. § 809.25(3)(c)1.

31

(2) The party or party's attorney knew, or should have known, that the motion "was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."[6]

¶ 16. The court made neither of these findings before it imposed sanctions. Yet, "as this court has emphasized, the [frivolous claims] statute does not allow the . . . [court] to conclude frivolousness or lack of it without findings stating which statutory criteria were present . . . ."[7]

¶ 17. The court never found that the motion was filed, used, or continued "in bad faith, solely for purposes of harassing or maliciously injuring another" under Wis. Stat. § 809.25(3)(c)1. Rather, this court merely stated, in a conclusory fashion, that on the basis of the untimeliness of the motion and its coming "shortly before oral argument in the United States Supreme Court," the "only reasonable inference" is that the motion "was filed in bad faith, for improper pur-

---

[6] Wis. Stat. § 809.25(3)(c)2.

[7] *Stern v. Thompson & Coates, Ltd.,* 185 Wis. 2d 220, 236, 517 N.W.2d 658 (1994) (quoting *Sommer v. Carr,* 99 Wis. 2d 789, 792, 299˙ N.W.2d 856 (1981), interpreting Wis. Stat. § 814.025(3), which is precisely the same language as § 809.025(3)(c)).

As one commentator noted, appellate courts are "reluctant to utilize [§ 809.25(3)(c)], however, partly because it requires the court to make a finding." Michael S. Heffernan, *Appellate Practice and Procedure in Wisconsin* § 16.3b, at 16–5 (2d ed. 1995).

32

poses, to undermine the public's confidence in the legitimacy of this court's decision and the integrity of this court as an institution."[8]

¶ 18. This court could not make the first required finding because the record does not contain sufficient facts to justify such a finding of subjective intent.[9] No basis exists in the record to conclude that the "sole" basis of the petitioners' motion was to harass Justice Wilcox, any other justice, or the court.

¶ 19. The court's opinion is absolutely silent regarding the second finding required under Wis. Stat. § 809.25(3)(c)2. that the motion was without reasonable basis in law or equity. This court never decided the merits of the challenge in the present case, that is, the court never decided whether Justice Wilcox erred in participating in *Jackson v. Benson*. That the petitioners' motion was denied because it was untimely is not the same as a finding that there was no reasonable basis in law or equity to bring the motion.

¶ 20. Because this court did not even come close to making either of the findings required under Wis. Stat. § 809.25(3)(c), the court cannot lawfully determine that the petitioners' motion was frivolous or impose sanctions under that section.

¶ 21. Under what authority then did the court determine that the petitioners' motion was frivolous and impose sanctions? This court had to search for another provision, not cited or relied on by the State's

[8] *Jackson*, 249 Wis. 2d 681, ¶ 24.

[9] Bad faith requires a factual determination of subjective intent. *Tomah-Mauston Broadcasting Co. v. Eklund,* 143 Wis. 2d 648, 658, 422 N.W.2d 169 (1988).

private counsel seeking sanctions, to reach the result it sought. So in footnote seven of the February 19, 2002 decision, the court states for the first and only time that it has "consider[ed]" the sanctions to be imposed "under both §§ 802.05(1)(a) and 809.25(3)." This court may have considered Wis. Stat. § 809.25(3), but as its decision clearly demonstrates, the court did not make the requisite findings of frivolousness and thus could not impose sanctions under that statute.

¶ 22. Therefore, this court must have determined frivolousness and imposed the sanctions under Wis. Stat. § 802.05(1)(a), the only other authority this court states that it considered. Section 802.05(1)(a) is a provision in chapter 802 governing procedure and practice in civil actions in circuit courts.[10] It requires an attorney to sign papers and states that the attorney's signature certifies that the attorney has determined that "the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." A circuit court may impose sanctions under § 802.05(1)(a) if the circuit court finds that the attorney has not determined that "the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

¶ 23. If this court were to rely on Wis. Stat. § 802.05(1)(a), should not the court have addressed the legal question of whether § 802.05(1)(a), which governs circuit court proceedings, applies in this case, given that § 809.25(3) already exists and explicitly covers sanc-

[10] Wis. Stat. § 801.01(2).

tions for frivolous appeals?[11] The sanction provisions

[11] By citing Wis. Stat. § 809.84, the decision seems to say that § 802.05 applies to the present case. Section 809.84, a default provision, provides that "[a]n appeal to the court [of appeals or supreme court] is governed by the rules of civil procedure as to all matters not covered by these rules [in chapter 809] unless the circumstances of the appeal or the context of the rule of civil procedure requires a contrary result."

A citation to and quotation of Wis. Stat. § 809.84 does not suffice, however, to make § 802.05(1) applicable to the present case. First, § 809.25 explicitly covers appellate procedure and § 809.25(3)(c) covers frivolous appeals. Thus, the very language of § 809.84 alerts the reader that § 802.05(1)(a) does not apply in the present case because the matter of frivolous appeals is covered in chapter 809 relating to appellate procedure.

Second, the context of Wis. Stat. § 802.05(1)(a) requires that it not be applied to proceedings in the supreme court. Section 802.05 initially covered only pleadings, not motions or other papers. There are no pleadings in appeals. Section 802.05(1)(a) was created by court rule and amended in 1987 by the legislature to include motions and other papers. There are motions in appeals. The 1987 amendment also created § 814.025(4), which provides that "to the extent s. 802.05 is applicable and differs from [§ 814.025], s. 802.05 applies." *See* Wis. Stat. § 814.025(4); Drafting File, 1987 Wisconsin Act 256, 1987 Sen. Bill 550, Legislative Reference Bureau, Madison, Wisconsin.

Section 814.025 was created by Laws 1977, ch. 209, and, like § 802.05(1)(a), governs costs and fees for frivolous litigation in the circuit courts. The February 19, 2002, decision does not refer to § 814.025. Sections 814.025 and 802.05 are, however, interconnected. Their interconnection demonstrates that both cover only circuit court actions.

To govern frivolous appeals, Wisconsin Stat. § 809.25(3) was created by 1981 Laws, ch. 316. The legislature used the same language in § 809.25(3) to govern frivolous appeals as it had in 1977 in § 814.025(3) to govern frivolous matters in the

are scattered in the statutes and overlap and conflict.[12] For example, the only two statutes upon which the majority opinion relies conflict. Section 809.25(3)(a) relating to appeals states that if an appeal is found frivolous the court shall award costs, while § 802.05(1)(a) relating to frivolous motions states that the court may impose costs. And should not the parties have been given an opportunity to present arguments on the legal question of the applicability of § 802.05(1)(a)[13] and to be accorded a hearing and present testimony and argument on the factual bases for the imposition of sanctions under § 802.05(1)(a)? The answer to these questions is clearly yes. But this court failed to take any such action.

circuit courts. *See* Drafting Files, Laws of 1981 ch. 316, 1981 Sen. Bill 823, Legislative Reference Bureau, Madison, Wisconsin. Nothing in § 809.25, however, refers to § 802.05 or determines which provision governs in the event of any conflict.

The interplay of Wis. Stat. §§ 802.05(1)(a), 809.25(3)(c), 809.84, and 814.025 demonstrates that the legislature intended §§ 802.05(1)(a) and 814.025 to govern frivolous matters in circuit courts and § 809.25(3)(c) to cover frivolous matters in appellate courts.

[12] The Judicial Council has recommended revision of the current law on sanctions for frivolous matters. *See* Amended Petition No. 99–07 filed with the Clerk of the Supreme Court, October 30, 2000. One of the objectives was to eliminate conflicting and overlapping provisions. For a further discussion of the need for revision of our law governing sanctions, see also Janine P. Geske & William C. Gleisner III, *The Effect of Jandrt on Satellite Litigation,* Wis. Lawyer, May 2000, at 11.

[13] For a critique of a court deciding issues that the court has identified on its own, see Adam A. Milani & Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts,* 69 Tenn. L. Rev. 245 (2002).

¶ 24. Where are this court's findings about the frivolous claim if the court is imposing sanctions under Wis. Stat. § 802.05(1)(a)? There are none. Where did this court find, as it is required to do, that the attorneys did not make the determinations required under § 802.05(1)(a) that "the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"? The court made no such finding. The court merely concluded that "the only reasonable inference" is that the motion was for "improper purposes."

¶ 25. Furthermore, the court does not describe the "improper purposes" except to write, without explanation, that the purpose of the motion was "to undermine the public's confidence in the legitimacy of this court's decision and the integrity of this court as an institution."[14]

¶ 26. Does this court consider it an improper purpose for a litigant to challenge a justice's impartiality? Does the court consider it an improper purpose for a litigant to attempt to vacate a decision so that any persuasive value of the decision would be diminished when a similar case is later argued before the U.S. Supreme Court? The proponents of school vouchers argued that "timing [of the filing of the motion to vacate] is so suspicious as to leave no other inference than that the movants [the petitioners] think nothing of using this Court's scarce resources in a larger, national battle over school choice."[15] But the Wisconsin

---

[14] *Jackson,* 249 Wis. 2d at 697, ¶ 24.

[15] Memorandum in Opposition to Motion to Vacate and Motion for Attorney Fees and Costs Pursuant to Wis. Stat. § 809.25(3) at 33.

school voucher law and this case have been of national interest since their inception.

¶ 27. The petitioners filed their motion six weeks before the U.S. Supreme Court was to hear an Ohio school voucher case.[16] This court issued its decision denying the motion to vacate *Jackson v. Benson* the day before the Ohio case was argued before the U.S. Supreme Court. Is the timing of these events coincidental? Does it matter? Lawyers frequently attempt to undermine cases that are not in their favor. They ask courts to distinguish, limit, vacate, or overrule prior cases. And this court has distinguished, limited, vacated, or overruled cases or has refused to do so. That is the common law process.

¶ 28. In sum, this court's decision declaring the motion frivolous and imposing sanctions is erroneous on its face as a matter of law. This court has failed to follow the law. It did not make the requisite findings under either Wis. Stat. § 809.25(3)(c) or § 802.05(1)(a). This court is not above the law. Therefore, the court should vacate Part II of its February 19, 2002, decision.

II

¶ 29. This cases raises additional concerns for me. I believe that the majority's decision about frivolousness and the imposition of sanctions are incompatible

---

[16] The Ohio school voucher case before the U.S. Supreme Court is *Zelman v. Simmons-Harris,* 234 F.3d 945 (6th Cir. 2000), *cert. granted,* 533 U.S. 976, 122 S.Ct. 23 (2001).

On June 27, 2002, the U.S. Supreme Court upheld the constitutionality of the Ohio school voucher law on a 5–4 decision. *Zelman v. Simmons-Harris,* 536 U.S. 639, 122 S.Ct. 2460 (2002).

with this court's institutional responsibility to be open and accessible and to deal forthrightly with challenges and criticism.

¶ 30. Neither courts nor litigants should be subject to actions without substance. A significant purpose of the frivolous action provisions is to maintain the integrity of the judicial system. Yet a determination of frivolousness is "an especially delicate area; a court must be cautious in declaring an action frivolous."[17] This court must give the public wide berth to exercise its constitutional right "to petition the government for the redress of grievances."[18] Keeping this court open to people who are challenging a decision of this court on the basis of a justice's alleged bias is especially critical, because this court is the only venue where a party can make this kind of challenge.

¶ 31. This court is not immune from criticism. When dealing with challenges and criticism, the court has legitimate concerns about protecting its integrity and the integrity of the entire judicial system. But a court protects its integrity by seriously, forthrightly, and fully considering a challenge, not by acting in a way that belittles or appears to belittle the challenge or the challengers, that punishes or appears to punish challengers by imposing substantial costs and expenses, and that implicitly or explicitly tries to silence future critics and challengers with the threat of dire costs and expenses. Attorneys John Skilton and Mark Frankel rightly assert on behalf of the petitioners that the court's decision to declare this motion frivolous and to

[17] *Juneau County v. Courthouse Employees,* 221 Wis. 2d 630, 639–40, 585 N.W.2d 587 (1998) (internal quotation and citation omitted).

[18] U.S. Const. amend. I; Wis. Const. art. I, § 4.

impose sanctions in the present case sends a chilling message to any person who might consider questioning a justice's impartiality and to any lawyer asked to represent that person. That is not the message this court should be sending.

¶ 32. If we are to protect the integrity of the judiciary, this court must ensure that it remains an institution that is open and accessible. It must not succumb to the temptation to silence challengers by attacking them personally or by diverting attention away from the merits of a challenge. Anyone challenging a decision of this court, the impartiality of a justice, or the integrity of this institution must receive a full, fair, and impartial hearing, without even a hint of recrimination, retribution, or retaliation. That is the message the court should be sending.

¶ 33. The court must be big enough in stature, strong enough in spirit, and gracious enough in action to respond fairly and fully on the merits to any challenge to its integrity, and then without vengeance or even the appearance of vengeance move on to our other business. The people of this state deserve no less.

¶ 34. I am disappointed in the court for not treating the challenge in the present case with the grace and dignity befitting this institution. Declaring the motion frivolous and imposing sanctions in the present case—in which the court is asked to sit in judgment on one of its own members—can too easily be read, in my opinion, as being spiteful. The imposition of sanctions can also be viewed as undermining confidence in the legitimacy of this court's decision-making and the integrity of this court as an institution.

¶ 35. Whether a challenge to a justice's impartiality undermines the court's integrity as an institution does not turn on the nature of the challenge. Rather, it

turns on the nature of this court's response to that challenge. This court's response in the present case was and continues to be, in my opinion, flawed, whether viewed from the law applicable to frivolous appeals or from the vantage point of the court's institutional responsibilities.

¶ 36. For these reasons, I dissent from the denial of this motion for reconsideration.

# APPENDIX A

Excerpt from the Wisconsin Supreme Court decision in *Jackson v. Benson,* 249 Wis. 2d 681, ¶¶ 23–24 (Part II Re Sanctions)

## II

¶ 23. The State of Wisconsin and Marquelle Miller, et al., ask this court to assess reasonable attorney fees and costs against respondents and their counsel pursuant to Wis. Stat. § 809.25(3).[7] We agree that the extraordinary untimeliness of the motion to vacate justifies a finding of frivolousness. The fact that the motion was filed a mere six weeks before the

---

[7] Wisconsin Stat. § 809.25(3) provides:

(3) Frivolous appeals. (a) If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees and reasonable attorney fees under this section. A motion for costs, fees and attorney fees under this subsection shall be filed no later than the filing of the respondent's brief, or if a cross-appeal is filed, the cross-respondent's brief.

(b) The costs, fees and attorney fees awarded under par. (a) may be assessed fully against the appellant or cross-appellant or the attorney representing the appellant or cross-appellant or may be assessed so that the appellant or cross-appellant and the attorney each pay a portion of the costs, fees and attorney fees.

(c) In order to find an appeal or cross-appeal to be frivolous under par. (a), the court must find one or more of the following:

The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

scheduled oral argument of another state-funded private school voucher case in the United States Supreme Court calls the timing of and motives behind the respondents' motion into question.

¶ 24. We conclude that the motion to vacate, coming as it did almost two years after the public disclosure of the information pertinent to the respondents' claims

---

Although the state and Marquelle Miller seek costs and attorneys fees under § 809.25(3), we note that § 802.05(1)(a) provides, in pertinent part,

> ... The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. ... If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper, or on a represented party, or on both. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees.

Section 809.84 provides: [a]n appeal to the court is governed by the rules of civil procedure as to all matters not covered by these rules unless the circumstances of the appeal or the context of the rule of civil procedures requires a contrary result.

We thus consider the state's and Marquelle Miller's motions under both §§ 802.05(1)(a) and 809.25(3).

and shortly before oral argument in the United States Supreme Court, was filed in bad faith, for improper purpose, to undermine the public's confidence in the legitimacy of this court's decision and the integrity of this court as an institution. The seriousness of a motion of this sort is not an excuse for tardiness in bringing it; to the contrary, the gravity of this type of motion compels that it be timely brought to ensure a prompt resolution. The only reasonable inference that can be drawn from the inordinate untimeliness and suspect timing of this motion is that it was brought in bad faith for improper purpose. Any other conclusion would seriously undermine the concept of frivolousness. We grant the motions of the state and Marquelle Miller, et. al., for an award of reasonable attorney fees and costs incurred in responding to the motion to vacate. We remand the matter to the Dane County Circuit Court for a determination of the amount of reasonable attorney fees and costs.

## APPENDIX B

Warner Jackson, Jennifer Evans, Wendell Harris, The Reverend Andrew Kennedy, Rabbi Isaac Serotta, Ceil Ann Libber, Father Thomas J. Mueller, Reverend John N. Gregg, Diane Brewer, Colleen Beaman, Mary Morris, Penny Morse, Kathleen Jones and Philip Jones, Plaintiffs-Respondents,

v.

John T. Benson, Superintendent of Public Instruction, Department of Public Instruction and James E. Doyle, Defendants-Appellants-Petitioners,

Marquelle Miller, Cynthia Miller, Angela Gray, Zachery Gray, Shon Richardson, George Richardson, Latrisha Henry, Faye Henry, Reigne Barrett, Valerie Barrett, Candice Williams, Senton Williams, Clintrai Giles, Sharon Giles, Intervenors-Defendants-Appellants,

Parents For School Choice, Pilar Gonzalez, Dinah Cooley, Julie Vogel, Kate Helsper, Blong Yang, Gail Crockett, Yolanda Lassiter and Jeanine Knox, Intervenors-Defendants-Appellants-Petitioners.

Milwaukee Teachers' Education Association, by its President, M. Charles Howard, Michael Lengyel, Donald Lucier, Tracy Adams, Milwaukee Public Schools Administrators and Supervisors Council, Inc., by its Executive Director, Carl A.

, 45

Gobel, People for the American Way, by its Executive Vice President and Legal Director, Elliott M. Minceberg, John Drew, Susan Endress, Richard Riley, Jeanette Robertson, Vincent Knox, Bertha Zamudio, James Johnson, Robert Ullman and Sally F. Mills, Plaintiffs-Respondents,

v.

John T. Benson, Superintendent of Public Instruction, Department of Public Instruction and James E. Doyle, Defendants-Appellants-Petitioners,

Marquelle Miller, Cynthia Miller, Angela Gray, Zachery Gray, Shon Richardson, George Richardson, Latrisha Henry, Faye Henry, Reigne Barrett, Valerie Barrett, Candice Williams, Senton Williams, Clintrai Giles, Sharon Giles, Intervenors-Defendants-Appellants,

Parents For School Choice, Pilar Gonzalez, Dinah Cooley, Julie Vogel, Kate Helsper, Blong Yang, Gail Crockett, Yolanda Lassiter and Jeanine Knox, Intervenors-Defendants-Appellants-Petitioners.

National Association for the Advancement of Colored People, Felmers O. Chaney, Lois Parker, on behalf of herself and her minor child, Rashaan Hobbs, Derrick D. Scott, on behalf of himself and his minor children, Deresia C.A. Scott and Desmond L.J. Scott, Constance J. Cherry, on behalf of herself and her minor children,

46 .

Monique J. Branch, Monica S. Branch, and William A. Branch, Plaintiffs-Respondents,

v.

John T. Benson, Superintendent of Public Instruction of Wisconsin, in his official capacity, Defendant-Appellant.

*No. 97–0270. Decided February 19, 2002.*

2002 WI 14

(Also reported in 639 N.W.2d 545.)

MOTION to vacate decision of June 10, 1998. *Dismissed; matter remanded to the Dane County Circuit Court.*

¶ 1. PER CURIAM. Four of the twenty-nine plaintiffs-respondents[1] in *Jackson v. Benson,* 218 Wis. 2d 835, 578 N.W.2d 602 (1998), *cert denied,* 525 U.S. 967 (1998), move this court to vacate its decision of June 10, 1998, upholding the constitutionality of the state's amended Milwaukee Parental Choice Program (MPCP). As grounds for their motion, the four respondents assert that they recently received new information that this court's decision was rendered by an improperly constituted panel because of the participation of a justice disqualified by law. The respondents seek to reinforce their motion by noting that the school choice issue is currently pending before the United States Supreme Court on a similar constitutional challenge to an Ohio school choice program. *See Zelman v. Simmons-Harris,* 234 F.3d 945 (6th Cir. 2000), *cert*

---

[1] Carl A. Gobel, Warner Jackson, Father Thomas J. Mueller, and Wendell Harris.

*granted,* 533 U.S. ___ (No. 00–1571). Oral argument in *Zelman* is scheduled for February 20, 2002. The respondents assert that at least three parties to this court's decision in *Jackson v. Benson* who support school choice have submitted amicus briefs to the United States Supreme Court and are likely to have cited *Jackson v. Benson* as persuasive authority.

¶ 2. We dismiss the respondents' motion because it is untimely and frivolous as a matter of law. More than 1300 days have passed since this court issued its decision in *Jackson v. Benson.* More importantly, more than 600 days have passed since the information advanced by respondents in support of their disqualification claim[2] became publicly known. Inasmuch as motions such as this constitute an attack on the integrity of this court's decisions, they must be brought promptly. This one was not. Respondents' inordinate and unex-

---

[2] Respondents contend that Justice Jon P. Wilcox was disqualified under Wis. Stat. § 757.19(2) and (3) (1999–2000), which provides:

(2) Any judge shall disqualify himself or herself from any civil or criminal action or proceeding when one of the following situations occurs:

(a) When a judge is related to any party or counsel thereto or their spouses within the 3rd degree of kinship.

(b) When a judge is a party or a material witness, except that a judge need not disqualify himself or herself if the judge determines that any pleading purporting to make him or her a party is false, sham or frivolous.

(c) When a judge previously acted as counsel to any party in the same action or proceeding.

(d) When a judge prepared as counsel any legal instrument or paper whose validity or construction is at issue.

(e) When a judge of an appellate court previously handled the action or proceeding while judge of an inferior court.

plained delay in raising the disqualification issue in a timely fashion constitutes a waiver of whatever objections they may have had in this regard and lead us to the conclusion that the motion to vacate is frivolous.

I

¶ 3. We set forth the significant facts surrounding *Jackson v. Benson* and respondents' claims that Justice Jon P. Wilcox should not have participated in the decision.

¶ 4. The constitutionality of the amended MPCP has been before this court on two occasions. In 1996 this court heard argument in an original action. On March 29, 1996, this court split three-three over the constitutionality of the amended MPCP, with Justice Wilcox voting to uphold it. *State ex rel. Thompson v. Jackson,* 199 Wis. 2d 714, 720, 546 N.W.2d 140 (1996). The case was remanded to Dane County Circuit Court, which later found the statute unconstitutional.

(f) When a judge has a significant financial or personal interest in the outcome of the matter. Such interest does not occur solely by the judge being a member of a political or taxing body that is a party.

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner.

(3) Any disqualification that may occur under sub. (2) may be waived by agreement of all parties and the judge after full and complete disclosure on the record of the factors creating such disqualification.

All subsequent statutory references to the Wisconsin Stat- . utes are to the 1999–2000 volumes unless otherwise indicated.

¶ 5. On April 1, 1997, Justice Wilcox won a ten-year term on this court, defeating Milwaukee attorney Walter Kelly by a margin of 185,437 votes.[3] On April 3, 1997, two days after the election, there was a press report that an anonymous group of individuals had spent an estimated $135,000 to print and mail as many as 450,000 postcards to support Justice Wilcox's election.[4] In April 1997 Mark Block, the campaign manager for the Justice Wilcox for Justice Campaign (JWJC), admitted to the public that he had been contacted in January and March by the group that sent the postcards, but he did not identify the group. The names of the persons who gave the money were not revealed at that time, nor was it revealed that the donors were school choice proponents.

¶ 6. On June 16, 1997, an organization called The Wisconsin Coalition for Voter Participation (WCVP) was identified as the group that coordinated the postcard mailing. On July 30, 1997, the State Elections Board voted unanimously to investigate the anonymous mass mailing. The investigation ultimately revealed that WCVP made disbursements and incurred obligations of approximately $200,000 on mailings and telephone calls to targeted voters.

¶ 7. On August 22, 1997, the court of appeals, in a two-one decision, affirmed an order of the circuit court for Dane county, Paul B. Higginbotham, Judge, finding the amended MPCP unconstitutional. *Jackson v. Benson,* 213 Wis. 2d 1, 570 N.W.2d 407 (Ct. App. 1997). The

---

[3] The vote totals were 476,900 for Justice Wilcox and 291,463 for Attorney Kelly. *State of Wisconsin Blue Book* at 870 (1997–98).

[4] Cary Segall, *Expense for Wilcox Goes Unreported,* WISCONSIN STATE JOURNAL, April 3, 1997.

majority of the court of appeals concluded that the amended MPCP was invalid under Article I, Section 18 of the Wisconsin Constitution because it directed payments of money from the state treasury for the benefit of religious seminaries. This court granted the state's petition for review on October 14, 1997. In late December 1997 the WCVP filed a lawsuit seeking to halt the investigation into possible ties between the group and the Wilcox campaign.

¶ 8. This court heard oral argument in *Jackson v. Benson* on March 4, 1998. The court issued its decision on June 10, 1998. Justice Steinmetz authored the majority opinion reversing the court of appeals. Justices Wilcox, Geske, and Crooks joined the majority opinion. Chief Justice Abrahamson and Justice Bablitch dissented. Justice Bradley did not participate. On June 26, 1998, intervenors/respondents Parents For School Choice, et al., filed a motion for clarification of the opinion, so that for a time a post-decision motion was pending before this court.[5] The motion was subsequently withdrawn. On November 9, 1998, the United States Supreme Court denied certiorari review.

¶ 9. In November 1999 the court of appeals allowed the State Elections Board to proceed in its investigation of the connection between the WCVP mailing and the Wilcox campaign, affirming the circuit court's dismissal of the WCVP's lawsuit to halt the investigation and have the mailing declared legal. *Coalition for Voter Participation v. Elections Bd.,* 231 Wis. 2d 670, 605 N.W.2d 654 (Ct. App. 1999), *review denied,* 231 Wis. 2d 377, 607 N.W.2d 293 (1999).

---

[5] The respondents did not file any post-decision motion at this time.

¶ 10. On March 22, 2000, the State Elections Board unanimously adopted the following motion:

MOTION: TO EXPRESS THE SENSE OF THE ELEC-TIONS BOARD THAT JUSTICE JON WILCOX DID NOTHING ILLEGAL AND WAS NOT PERSONALLY RESPONSIBLE FOR ANY ILLEGAL ACTIVITIES OF HIS CAMPAIGN FOR THE OFFICE OF JUSTICE OF THE SUPREME COURT, THE ELECTION FOR WHICH WAS HELD IN APRIL 1997; . . .

¶ 11. In the spring of 2000 the identities of the persons who contributed to the WCVP became publicly known.[6]

¶ 12. On March 20, 2001, the civil action brought by the State Elections Board against the JWJC and campaign manager Mark Block ended with a monetary settlement, stipulation, and order for dismissal. In a statement attached to the stipulation, Justice Wilcox stated:

Last March the State Elections Board stated that it was the sense of the Board that I did nothing illegal and was not personally responsible for any illegal activities of my campaign. However, the Board's investigation has implicated my campaign manager and others in viola-tions of the state's campaign finance law. I choose not to contest this. I acknowledge that I had a responsibility for the conduct of campaign staff. Therefore, as the candidate, I am funding my campaign committee so that the committee can pay a monetary penalty to settle this matter.

---

[6] Cary Segall and Andy Hall, *Big, Out-of-State Donors Weighed In For Court Case,* WISCONSIN STATE JOURNAL, March 19, 2000; Cary Segall and Andy Hall, *Wilcox Backers Revealed, GOP School-Choice Supporters Funded Secret Effort,* WISCONSIN STATE JOURNAL, April 20, 2000.

¶ 13. On January 9, 2002, respondents filed their motion to vacate the *Jackson v. Benson* decision, claiming that the facts set forth above demonstrate that Justice Wilcox was disqualified by law from participating in the case.

¶ 14. The general rule is that, after remittitur, the supreme court has no jurisdiction to vacate or modify its judgment. *Ott v. Boring,* 131 Wis. 472, 110 N.W. 824 (1907). Where a justice who participated in a case was disqualified by law the court's judgment in that case is void. *Case v. Hoffman,* 100 Wis. 314, 72 N.W. 390, *reh'g granted* 74 N.W. 220 (1898). We have previously stated, "[a]n attack on the validity of a judgment of the state's highest court on the ground of a member's disqualification by law for an apparent inability to act impartially is not, nor can we conceive of it ever being, a 'routine matter.'" *State v. American TV & Appliance,* 151 Wis. 2d 175, 192, 443 N.W.2d 662 (1989). We have also said, however, that it behooves the court in the defense of its own legitimacy and of its integrity to consider a party's claim that a decision may be void because a justice should not have participated in the case. *City of Edgerton v. General Cas. Co.,* 190 Wis. 2d 510, 527 N.W.2d 305 (1995).

¶ 15. The chronology of events in this case demonstrates that the respondents were on notice by the spring of 2000 as to the identity of the donors to WCVP and their support of the school choice issue. Instead of bringing their motion at that time, the respondents remained silent for almost another two years, raising their disqualification objection on the eve of the United States Supreme Court's oral argument in another case raising the issue of the constitutionality of a private school voucher program.

53

¶ 16. Although respondents claim "it was not until a few months ago that information was made public casting a shadow on the 1997 supreme court election and highlighting the role of money in that election from the advocates for the defendants in a pending case," the record amply demonstrates that all information arguably pertinent to any disqualification issue in the case was publicly known by the spring of 2000. By failing to raise the issue in a timely fashion, respondents waived whatever objections they may have had to Justice Wilcox's participation in the court's decision.

¶ 17. We came to a similar conclusion in *City of Edgerton*. In that case Edgerton Sand & Gravel, Inc., (ES&G) moved to vacate this court's decision or, in the alternative, moved for a rehearing in the matter. Edgerton Sand & Gravel, Inc., argued that Justice Geske improperly participated in the case. At the outset of oral argument, Justice Geske stated on the record that the previous night she noted for the first time that one of the companies listed in the appendix to an amicus brief was St. Paul Companies, the employer of Justice Geske's husband. Justice Geske stated she did not believe that fact presented any conflict and it would not influence her. She informed the parties that if anyone had any objections to her sitting on the case, she would appreciate hearing from them by letter by the end of the week.

¶ 18. No objection was raised by any of the parties until a non-party, Kenosha Auto Transport (KAT), raised the question of Justice Geske's participation in a proposed amicus brief KAT tendered to the court in support of a motion for reconsideration filed over seven months later. The motion to file an amicus brief was denied and the movants' request to seek Justice Geske's disqualification was dismissed. More than two months

later ES&G filed a motion to vacate the decision, arguing that Justice Geske was disqualified under Wis. Stat. § 757.19(2) and (3) from participating in the original decision and asking for the vacation of the decision or, in the alternative, for rehearing without Justice Geske's participation. Edgerton Sand & Gravel, Inc., argued that Justice Geske's disclosure about her connection with St. Paul Companies had been incomplete.

¶ 19. The *Edgerton* court noted that the disqualification statute provides that any disqualification "may be waived by agreement of all parties and the judge after full and complete disclosure on the record of factors creating the disqualification." Wis. Stat. § 757.19(3). The *Edgerton* court found it significant that ES&G did not argue that Justice Geske's disclosure and her setting of a time limit to object or to waive objection to her participation in the case was not a proper procedural framework for the waiver of disqualification. Instead, ES&G argued Justice Geske's disclosure was not sufficient and did not constitute a "full and complete disclosure." The *Edgerton* court said:

> We conclude that under the circumstances of this case the disclosure made by Justice Geske was sufficient— that all the facts necessary for counsel to determine whether to assert or waive any disqualification were either disclosed or were readily obtainable of record prior to the "weekend deadline" suggested by Justice Geske. Following that disclosure, if ES&G had been concerned, it could have examined the financial disclosures Justice Geske had filed with the Ethics Board and if those disclosures did not satisfy ES&G in respect to Justice Geske's financial ties to St. Paul Companies, it could have asked for more information from her or could have advised her "by the end of the week" that it objected to her participation.

If ES&G's counsel examined the public record, it apparently did not deem the information in it sufficient to pursue the disqualification issue. Now, however, ES&G's substituted counsel asserts that Justice Geske's disqualification was required on the basis of inferences it makes from that information. Clearly, ES&G waived any possible disqualification by not acting by the "end of the week" and for one year following oral argument.

Even after the court's decision on June 16, 1994—after learning that Justice Geske was the scrivener for the court—ES&G's counsel did not raise the question of Justice Geske's qualification to sit but asserted in its reconsideration motion only that the court had failed to follow what counsel considered controlling law. Despite the fact that ES&G had been served with a copy of KAT's proposed amicus motion and brief raising the disqualification issue, it did not join in KAT's motion or express to the court in its motion for reconsideration on the merits any position in respect to disqualification.

Hence, we conclude that on at least two discrete occasions, ES&G's counsel failed to make any objection to Justice Geske's participation. These successive waivers in themselves bar ES&G from asserting its motion for vacatur at this time, months after it could have informed itself of the facts on which its motion is based and made any concern known to the court.

*Id.* at 518–19.

¶ 20. The same analysis applies with even greater force in this case. Although there was no judicial disclosure here, the basic facts upon which the respondents now rely in raising the issue of Justice Wilcox's participation were readily available as of the spring of 2000. Yet respondents did not raise the disqualification issue at that time; indeed, their inaction continued for almost another two years.

¶ 21. Not until January 9, 2002, twenty-one months after the identity of the donors to WCVP became publicly known, did respondents file a motion to vacate the decision. Respondents' delay in bringing the motion mandates a finding of waiver. Although respondents claim the motion was filed in January of 2002 because of "new information," this court has searched the entire record and found nothing "new." Instead, all of the facts arguably pertinent to the disqualification claim were well known in the spring of 2000.

¶ 22. The respondents' inordinate delay in filing the motion to vacate mocks the fundamental and vital principle of finality, which is essential to the operation of a society governed by law. *See Wittke v. State ex rel. Smith,* 80 Wis. 2d 332, 342, 259 N.W.2d 515 (1977). Motions such as this, having the potential to undermine the public's trust and confidence in the legitimacy of this court's decisions and the integrity and impartiality of this court as an institution, are very serious indeed, and, accordingly, must be raised in a timely fashion.

II

¶ 23. The State of Wisconsin and Marquelle Miller, et al., ask this court to assess reasonable attorney fees and costs against respondents and their counsel pursuant to Wis. Stat. § 809.25(3).[7] We agree that the extraordinary untimeliness of the motion to vacate justifies a finding of frivolousness. The fact that the

---

[7] Wisconsin Stat. § 809.25(3) provides:

(3) Frivolous appeals. (a) If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees and reasonable attorney fees under this section. A motion for costs, fees and attorney fees under this subsection shall be filed no later than the filing of the respondent's brief, or if a cross-appeal is filed, the cross-respondent's brief.

motion was filed a mere six weeks before the scheduled oral argument of another state-funded private school

> (b) The costs, fees and attorney fees awarded under par. (a) may be assessed fully against the appellant or cross-appellant or the attorney representing the appellant or cross-appellant or may be assessed so that the appellant or cross-appellant and the attorney each pay a portion of the costs, fees and attorney fees.
>
> (c) In order to find an appeal or cross-appeal to be frivolous under par. (a), the court must find one or more of the following:
>
> The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
>
> The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Although the state and Marquelle Miller seek costs and attorneys fees under § 809.25(3), we note that § 802.05(1)(a) provides, in pertinent part,

> . . . The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper, or on a represented party, or on both. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees.

voucher case in the United States Supreme Court calls the timing of and motives behind the respondents' motion into question.

¶ 24. We conclude that the motion to vacate, coming as it did almost two years after the public disclosure of the information pertinent to the respondents' claims and shortly before oral argument in the United States Supreme Court, was filed in bad faith, for improper purpose, to undermine the public's confidence in the legitimacy of this court's decision and the integrity of this court as an institution. The seriousness of a motion of this sort is not an excuse for tardiness in bringing it; to the contrary, the gravity of this type of motion compels that it be timely brought to ensure a prompt resolution. The only reasonable inference that can be drawn from the inordinate untimeliness and suspect timing of this motion is that it was brought in bad faith for improper purpose. Any other conclusion would seriously undermine the concept of frivolousness. We grant the motions of the state and Marquelle Miller, et. al., for an award of reasonable attorney fees and costs incurred in responding to the motion to vacate. We remand the matter to the Dane County Circuit Court for a determination of the amount of reasonable attorney fees and costs.

¶ 25. JON P. WILCOX and ANN WALSH BRADLEY, JJ., did not participate.

---

Section 809.84 provides: [a]n appeal to the court is governed by the rules of civil procedure as to all matters not covered by these rules unless the circumstances of the appeal or the context of the rule of civil procedures requires a contrary result.

We thus consider the state's and Marquelle Miller's motions under both §§ 802.05(1)(a) and 809.25(3).

¶ 26. SHIRLEY S. ABRAHAMSON, CHIEF JUS-
TICE *(concurring in part, dissenting in part).* I join
only Part I of the court's opinion. I do not join Part II of
the opinion remanding the matter to the Dane County
Circuit Court to determine the amount of reasonable
attorney fees and costs for a frivolous action. This
proceeding ought to end now.